# EXHIBIT - B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| 1. THE ROCKEFELLER UNIVERSITY§<br>    and                   §<br>2. CHIRON CORPORATION,    §<br>                          §<br>    **Plaintiffs,**       §<br>                          §<br>v.                        §<br>                          §<br>1. CENTOCOR, INC.         §<br>    and                   §<br>2. ABBOTT LABORATORIES,   §<br>                          §<br>    **Defendants.**       § | **CIVIL ACTION NO. 2-04CV-168-TJW** |

<u>STIPULATED PROTECTIVE ORDER</u>

WHEREAS, The Rockefeller University, Chiron Corporation, Centocor, Inc. and

Abbott Laboratories, the parties to this action (collectively the "parties" and individually a

"party"), and likely third party witnesses possess confidential information which may be

disclosed in responding to discovery requests or otherwise in this action and which must be

protected in order to preserve the legitimate business and other interests of the parties, and

WHEREAS, the parties have, through counsel, stipulated to the entry of this

Protective Order to prevent unnecessary dissemination or disclosure of such confidential

information,

IT IS HEREBY ORDERED that:

1.    <u>Definitions</u>

a.    The term "Confidential Information" as used in this Order is to

include all information that the designating party believes constitutes or discloses or relates to

processes, operations, research, technical or developmental information, production, marketing,

sales, shipments or other proprietary data or information of commercial value, including but not

limited to trade secrets. It may include, without limitation, documents produced in this action,

during formal discovery or otherwise; documents and information produced by third parties

which the producing or designating party is under an obligation to maintain in confidence;

answers to interrogatories and responses to requests for admission or other discovery requests;

deposition transcripts; and tangible things or objects that are designated confidential pursuant to

this Order. The information contained therein and all copies, abstracts, excerpts, analyses or

other writings that contain, reflect, reveal, suggest or otherwise disclose such Confidential

Information shall also be deemed Confidential Information. Information originally designated as

Confidential Information pursuant to this agreement shall not retain Confidential status after any

ruling by any Court denying such status.

    b.  The term "designating party" means the party producing or

designating documents or information as Confidential Information under this Order.

    c.  The term "receiving party" shall mean any person to whom

Confidential Information is disclosed.

**Designation of Confidential Information**

    2.  Any party who produces or discloses any material that it believes

comprises Confidential Information shall designate the same by marking "CONFIDENTIAL" on

all documents containing the information.

    3.  If a producing party elects to produce original files and records for

inspection and the inspecting party desires to inspect those files, no confidentiality designations

need be made by the producing party in advance of the initial inspection, but the party inspecting

such files and records shall maintain the confidentiality of all those original files and records that

it reviews. Thereafter, upon selection of specified documents for copying by the inspecting

party, the producing party shall mark the copies of such documents as may contain protected

subject matter with the appropriate designation at the time the copies are produced to the inspecting party.

      4.     If any Confidential Information is produced by a third party to this litigation, such third party shall be considered a "designating party" within the meaning of that term as it is used in the context of this Order and both parties to this Order should be treated as receiving parties.

      5.     Confidential Information that originated with a third party, subject to the terms of any confidentiality obligation to that third party, may be designated as "Confidential" and shall, once designated, be subject to the restrictions on disclosure specified in Paragraph 7.

      6.     In the event any designating party produces Confidential Information that has not been designated "Confidential" or not correctly designated, the designating party may designate or redesignate the information to the same extent as it may have designated the information before production by a subsequent notice in writing specifically identifying the redesignated information accompanied by a replacement set of such misdesignated documents bearing a "Confidential" designation thereon, in which event the parties shall henceforth treat such information in accord with this Protective Order, and shall undertake their best efforts to correct any disclosure of such information contrary to the redesignation. Further, the receiving party shall immediately return the documents that lacked the "Confidential" designation to the designating party upon receiving the replacement set of documents bearing the "Confidential" designation. No showing of error, inadvertence, or excusable neglect shall be required for such redesignation.

### Disclosure of Confidential Information

      7.     Information designated "Confidential" shall not be given, shown, made available or communicated in any way to any person or entity other than the following:

         a.     Litigation counsel for The Rockefeller University and Chiron

Corporation:

             i.     Kaye Scholer LLP

             ii.    McKool Smith P.C.

         b.     Litigation counsel for Centocor, Inc.:

             i.     Sidley Austin Brown & Wood LLP

             ii.    Young, Pickett & Lee

         c.     Litigation counsel for Abbott Laboratories:

             i.     Winston & Strawn LLP

             ii.    The Roth Law Firm

         d.     Members or employees of any of the foregoing law firms assisting

in this litigation as well as any independent litigation support providers retained by such firms to

assist in this litigation (*e.g.*, outside copy services, graphic artists and visual aid providers, and

jury consultants).

         e.     The Court and Court personnel and stenographic/videographic

reporters at depositions taken in this action.

         f.     The in-house counsel listed below, as well as the non-lawyer

employees within the legal department who assist them, provided, however, that no person who

is currently involved in the preparation or prosecution of any U.S. or foreign patent application

that claims priority based on any of the applications that led to the patents-in-suit will be

permitted access to any Confidential Information, whether listed below or not:

i.      For plaintiff The Rockefeller University: Harriet S. Rabb, Teresa L. Solomon, and Deborah Y. Yeoh.

ii.      For plaintiff Chiron Corporation: Lisa Alexander, Ursula Bartels, Robert Blackburn, Steven Collier, Alisa Harbin, Jessica Hoover, Nancy Koch, and Ethan Knowlden.

iii.      For defendant Centocor, Inc. and/or its corporate parent Johnson & Johnson: Eric Harris, Steven Berman, Kenneth Dow, Taysen van Itallie, and Philip Johnson.

iv.      For defendant Abbott Laboratories: Laura Schumacher, Jose Rivera, Sarah Lyke, Lawrence Pope, Mimi Goller, and Rob DeBerardine.

g.      Independent consultants or experts and their staff not employed by or affiliated with a party or with a party's licensee or licensor, retained by the attorneys for the parties either as technical consultants or expert witnesses for the purposes of this litigation, provided that (i) such persons have complied with the procedure of Paragraph 12 herein, and (ii) agree in writing to be bound by the provisions of this Order, in the form set forth as Exhibit A, hereto.

h.      The list of persons to whom Confidential Information may be disclosed may be expanded or modified by mutual agreement in writing by counsel for the designating party and the receiving party without necessity of modifying this Order.

i.      The receiving party shall give notice of this Order and advise of the duty to comply with its terms to any person allowed access to Confidential Information prior to allowing said person access to Confidential Information.

### No Waiver of Privileges

8.　　Inadvertent production of documents or information subject to attorney-client privilege, work product immunity, or any other applicable privilege or immunity shall not constitute a waiver of, nor a prejudice to, any claim that such or related material is privileged or protected by the work product immunity, provided that the designating party notifies the receiving party in writing promptly after discovery of such inadvertent production. Such inadvertently produced documents and all copies thereof shall promptly be returned to the designating party upon request. No use shall be made of such documents other than to challenge the propriety of the asserted privilege or immunity, nor shall they be shown to anyone who has not already been given access to them subsequent to the request to return them. No demonstration or proof of error, inadvertence, excusable neglect, or absence of negligence shall be required of the designating party in order for such party to avail itself of the provisions of this paragraph.

### Use and Control of the Confidential Information

9.　　All Confidential Information disclosed pursuant to this Order shall be used by any recipient thereof solely for the purposes of this litigation, and not for any business or competitive or other purposes. It shall be the duty of each party and each individual having notice of this Protective Order to comply with this Order from the time of such notice.

10.　　All depositions shall be marked "CONFIDENTIAL" regardless of whether a designation of confidentiality was made on the record or otherwise and shall be subject to this Protective Order, unless and until the receiving party makes a request to the party producing the witness or counsel for the witness to release the deposition or any portion thereof from Confidential treatment, and only if, and to the extent, the party producing the witness or counsel for the witness agrees in writing to the modification of treatment of all or part of the transcript, or

unless the Court so orders. If the party producing the witness or counsel for the witness fails to

respond to such a request within 14 days, the receiving party may move the Court for an order

releasing the requested transcript or portion thereof from Confidential treatment.

11.    All Confidential Information that is filed with the Court, and any

pleadings, motions or other papers filed with the Court disclosing any Confidential Information,

shall be filed and maintained in Court under seal. Where practical, only confidential portions of

filings with the Court shall be filed under seal.

12.    Before any person may be given access to Confidential Information under

Paragraph 7(g), the party seeking to provide such access must give written notice to the attorneys

for the designating party of the intention to make such disclosure, stating the name, address, and

a resume of the background and qualifications of the person to whom disclosure is proposed.

Within ten (10) days from the service of such written notice, the designating party may object to

such disclosure by service of a written notice of objection on the attorneys for the party seeking

to make the disclosure, stating the reasons for the objection. No disclosure of Confidential

Information to any such person may occur prior to the expiration of ten (10) days from the date

of service of the written notice of intent to disclose unless consent is granted earlier by the

designating party. If the designating party gives notice of objection to disclosure, the party

seeking to make the disclosure must seek leave of the Court to make the disclosure and may not

make such disclosure without an order of the Court authorizing such disclosure.

13.    Nothing in this Order shall prevent or otherwise restrict counsel for a party

from rendering legal advice to such party with respect to the litigation and, in the course thereof,

relying upon an examination of Confidential Information; provided, however, that in rendering

such advice and in otherwise communicating with the party, counsel shall not disclose Confidential Information.

14.     Nothing herein shall prevent any party from disclosing its own Confidential Information in any manner that it considers appropriate. Additionally, counsel for either party shall be entitled to show or use Confidential Information obtained from another party, during examination, either at deposition or at any hearing or trial, of any officer, employee or retained expert of the designating party. Counsel for either party shall also be entitled to show or use Confidential Information obtained from another party, during examination, either at deposition or at any hearing or trial, of any person who is apparently an author, creator or recipient of the Confidential Information.

15.     If a party intends to reveal Confidential Information of another party during a trial, court appearance or hearing which is open to the public, the party intending to reveal such Confidential Information shall provide notice and opportunity to object, unless consent from the designating party is previously obtained.

### Duration of Order, Objections, Modifications

16.     This Protective Order shall remain in force and effect until modified, superseded or terminated by order of this Court, which may be entered pursuant to agreement of the parties hereto. This Protective Order shall continue in effect after termination of this action and continue to be binding upon all persons to whom Confidential Information is disclosed hereunder.

17.     Upon final termination of this action (including all appeals) the receiving party shall, within thirty (30) days of such termination, either return to the designating party or destroy all Confidential Information in its possession. In either event, the receiving party shall describe the materials returned or destroyed and certify their return or destruction, with the

exception that outside counsel and the persons designated in Paragraph 7(f) may retain (i) copies

of the pleadings or other papers filed with the Court or served in the course of the litigation,

depositions transcripts, deposition exhibits and the trial record; and (ii) one file copy of all

documents produced in the course of discovery. Nothing herein shall restrict the ability of the

parties or their counsel to retain information or documents not designated as Confidential

Information by the producing party.

18.    If the receiving party learns that Confidential Information produced to it is

disclosed to or comes into the possession of any person other than in the manner authorized by

this Order, the receiving party responsible for the disclosure must immediately inform the

designating party of such disclosure and shall make a good faith effort to retrieve any documents

or things so disclosed and to prevent disclosure by each unauthorized person who received such

information.

19.    Any receiving party may at any time request that the designating party

remove the "Confidential" designation with respect to any document, object or information.

Such request shall be served on counsel for the designating party, and shall particularly identify

the designated Confidential Information that the receiving party contends is not confidential and

the reasons supporting its contention. If the designating party does not agree to remove the

"Confidential" designation within 14 days, then the party contending that such documents or

information are not Confidential may file a motion to remove such information from the

restrictions of this Order.

### Miscellaneous

20.    This Protective Order may be modified only by written agreement of the

parties or further order of the Court and is without prejudice to the rights of any party or third

party to seek additional or different relief from the Court not specified in this Order.

21.    The designation by counsel for the designating party of any document, material or information as constituting or containing Confidential Information is intended solely to facilitate the preparation and trial of this case, and such designation shall not be construed in any way as an admission or agreement by any party that such document, material or information constitutes or contains any Confidential Information as a matter of law.

22.    Any court reporter who transcribes testimony in this action at a deposition shall agree, before transcribing any such testimony, that all Confidential testimony is and shall remain confidential and shall not be disclosed except as provided under this Order and that copies of any transcript, reporter's notes or any other transcription records of any such testimony shall be retained in absolute confidentiality and safekeeping by such shorthand reporter or shall be delivered to an attorney of record or filed with the Court.

23.    In the event Confidential Information disclosed during the course of the litigation is sought by any person or entity not a party to this litigation, whether by subpoena in another action or service with any legal process, the party receiving such subpoena or service shall promptly notify in writing outside counsel for the designating party if such subpoena or service demands the production of Confidential Information of such designating party.  Any such person or entity seeking such Confidential Information by attempting to enforce such subpoena or other legal process shall be apprised of this Protective Order by outside counsel for the party upon whom the subpoena or process was served.  Nothing herein shall be construed as requiring anyone covered by this Protective Order to contest a subpoena or other process, to appeal any order requiring production of Confidential Information covered by this Protective Order, or to subject itself to penalties for non-compliance with any legal process or order.

24.     In the event anyone shall violate or threaten to violate the terms of this Stipulated Protective Order, the aggrieved party immediately may apply to obtain injunctive relief against any such person violating or threatening to violate any of the terms of this Stipulated Protective Order, and in the event that the aggrieved party does so, the responding party, subject to the provisions of this Stipulated Protective Order, shall not employ as a defense thereto the claim that the aggrieved party possesses an adequate remedy at law.

25.     Nothing herein shall prevent any party or non-party from seeking additional or different relief from the Court not specified in this Order.

26.     The section titles in this Order are for convenience of organization only, and are not part of, nor are they relevant to the construction of this Order.

SIGNED this 11th day of March, 2005.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

AGREED TO:

Attorneys for The Rockefeller University and
Chiron Corporation:

DATE: March 10, 2005                By _____/s/ Sam Baxter_____
                                       Sam Baxter
                                       Texas State Bar No. 01938000
                                       McKool Smith P.C.
                                       505 E. Travis, Suite 105
                                       P.O. Box 0
                                       Marshall, Texas 75670
                                       Telephone: (903) 927-2111
                                       Telecopier: (903) 927-2622
                                       sbaxter@mckoolsmith.com


                                    By _____/s/ Sylvia Becker (w/permission SB)_____
                                       Sylvia Becker
                                       KAYE SCHOLER LLP
                                       901 15th St. N.W., Suite 1100
                                       Washington, DC 20005
                                       Telephone: (202) 682-3500
                                       Telecopier: (202) 414-0334
                                       sbecker@kayescholer.com


Attorneys for Centocor, Inc.:


                                    By _____/s/ Damon Young (w/permission SB)_____
                                       Damon Young
                                       Texas State Bar No. 22176700
                                       YOUNG, PICKETT & LEE
                                       4122 Texas Blvd.
                                       P.O. Box 1897
                                       Texarkana, Texas 75503
                                       Telephone: (903) 794-1303
                                       Telecopier: (903) 792-5098
                                       dmyoung64@aol.com

By \_\_\_\_\_ /s/ David T. Pritikin (w/permission SB) \_\_\_\_\_
David T. Pritikin
Sidley Austin Brown & Wood, L.L.P.
Bank One Plaza
10 South Dearborn Ave.
Chicago, Illinois 60603
Telephone: (312) 853-7000
Telecopier: (312) 853-7036
dpritiki@sidley.com


Attorneys for Abbott Laboratories:


By \_\_\_\_\_ /s/ Carl R. Roth (w/permission SB) _____
Carl R. Roth
Texas State Bar No. 17312000
THE ROTH LAW FIRM
P.O. Box Drawer 876
115 N. Wellington, Suite 200
Marshall, Texas 75670
Telephone: (903) 935-1665
Telecopier: (903) 935-1797
cr@rothfirm.com


By \_\_\_\_\_ /s/ George C. Lombardi (w/permission SB) \_\_\_\_\_
George C. Lombardi
WINSTON & STRAWN LLP
35 West Wacker Dr.
Chicago, Illinois 60601
Telephone: (312) 558-5600
Telecopier: (312) 558-5700
glombardi@winston.com

**EXHIBIT A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| 1. THE ROCKEFELLER UNIVERSITY | § | |
| and | § | |
| 2. CHIRON CORPORATION, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO. 2-04CV-168-TJW** |
| v. | § | |
| | § | |
| 1. CENTOCOR, INC. | § | |
| and | § | |
| 2. ABBOTT LABORATORIES | § | |
| | § | |
| **Defendants.** | § | |

## DECLARATION OF COMPLIANCE

I, _____ do declare and state as follows:

1.    I live at _____. I am employed as (state position) _____ by (state name and address of employer) _____.

2.    I have read the Protective Order entered in this case, a copy of which has been given to me.

3.    I understand and agree to comply with and be bound by the provisions of the Protective Order and consent to the jurisdiction of the district court to enforce the terms of the Protective Order, including that upon receipt of any Confidential Information, I will be personally subject to it, and to all of its requirements and procedures.

      4.     Further, I declare, as provided by 28 U.S.C. § 1746, under penalty of

perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed this _____ day of _____, 20____.

 

                                                      _____

                                                           (Signature)

# EXHIBIT - C

MORRISON & FOERSTER LLP
Rachel Krevans, *admitted pro hac vice*
415 Market Street
San Francisco, CA 94105-2482
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

William J. Kuhne
1290 Avenue of the Americas
New York, New York 10104-0012
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Attorneys for Defendant*
*Novartis Vaccines and Diagnostics, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
|  |  |
|---|---|
| DR. ANTHONY CERAMI, | 1:07-CV-05634-AKH-DFE |
| Plaintiff, | |
| -against- | **NOVARTIS VACCINES AND DIAGNOSTICS, INC.'S INITIAL DISCLOSURES** |
| NOVARTIS AG and NOVARTIS VACCINES AND DIAGNOSTICS, INC., | |
| Defendants. | **ECF CASE** |

-------------------------------------------------------------------x

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendant Novartis

Vaccines and Diagnostics, Inc. ("Defendant") hereby provides the following initial disclosures.

These initial disclosures are based solely on the information available to Defendant at the present

time based on a reasonable search, and are made without prejudice to Defendant's right to

present additional evidence, including, but not limited to, evidence obtained through discovery or

through continued investigation in this action or any future filing or proceeding, including, but

not limited to, at trial. Defendant accordingly reserves the right to supplement or amend these

initial disclosures in the future.

Information or materials protected by the attorney-client privilege and/or the work product doctrine will not be disclosed as a part of these initial disclosures. Defendant reserves the right to object in this action or any other action to the production and/or introduction into evidence of these disclosures, any document within the categories described below and/or testimony by any of the disclosed witnesses on any proper ground, and reserves the right to object on any proper ground to any discovery request or proceeding involving or relating to the subject matter of these disclosures.

## I.   IDENTIFICATION OF INDIVIDUALS

Pursuant to Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure, Defendant identifies the following individuals as currently expected to have discoverable information that Defendant may use to support its claims or defenses, unless solely for impeachment. Defendant expects to obtain the identity of other individuals who have discoverable information through discovery. Defendant does not concede that the individuals listed herein necessarily have discoverable information. Further, the present and former employees of Defendant identified below should be contacted solely through Morrison & Foerster LLP.

| Individual | Issue(s) |
|---|---|
| Dr. Juerg Baenziger<br>4560 Horton Street<br>Emeryville, CA 94608<br>510-923-2993 | The litigation against Abbott and Centocor (the "TNF litigation") and Dr. Cerami's claim for unjust enrichment. |
| Dr. Anthony Cerami | The consulting agreement between Dr. Cerami and Chiron; payments received by Dr. Cerami during the time period put at issue in the complaint; the TNF litigation; the inventions set forth in the patents at issue in the TNF litigation and the work that led to those inventions; all matters referenced in Dr. Cerami's complaint. |
| Masanobu Kawakami | The inventions set forth in the patents at issue in the TNF litigation and the work that led to those inventions. |
| Nancy Koch, Esq. | The TNF litigation and Dr. Cerami's claim for |

| | unjust enrichment. |
|---|---|
| Dr. Edward Penhoet<br>President<br>Gordon and Betty Moore<br>Foundation<br>Presidio of San Francisco<br>P.O. Box 29910<br>San Francisco, CA 94129-0910<br>415-561-7700 | The consulting agreement between Dr. Cerami and Chiron, the license agreement between The Rockefeller University ("Rockefeller") and Chiron, and related matters. |
| Dr. William J. Rutter<br>863 Mitten Road , Suite 101<br>Burlingame, CA 94010<br>415-344-0844 | The consulting agreement between Dr. Cerami and Chiron, the license agreement between Rockefeller and Chiron, and related matters. |
| One or more individuals from Rockefeller University | Dr. Cerami's employment with Rockefeller; the license agreement between Rockefeller and Chiron; compensation paid to Dr. Cerami. |
| Individuals identified in Plaintiff's initial disclosures | Issues identified in Plaintiff's initial disclosures. |

## II.    DOCUMENTS AND THINGS

Pursuant to Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure, Defendant hereby

describes by category and location the documents, data compilations, and tangible things that are

in its possession, custody, or control and that it may use to support its claims or defenses, unless

solely for impeachment:

1. The license agreement with Rockefeller, as amended, and correspondence related thereto.

2. The August 16, 1985, consulting agreement with Cerami and correspondence related thereto.

3. United States Patents 6,309,640 and 6,419,927 and related documents.

4. Documents reflecting payments made to Dr. Cerami.

5. The settlement agreements with Centocor and Abbott and related documentation, which are subject to confidentiality agreements.

6. The July 9, 2001, litigation consulting agreement.

7. Certain documents from the TNF litigation that are currently subject to the protective order entered therein.

8. The documents, electronically stored information, and/or tangible things identified by Defendant in its initial disclosures.

The foregoing documents are located generally at Defendant's offices in Emeryville, California, the offices of Defendant's counsel, Morrison & Foerster LLP, in New York, New York, the offices of Defendant's counsel in the TNF litigation, Kaye Scholer, and/or in the Plaintiff's possession, custody, or control. Defendant notes that its investigation is ongoing and that additional documents may be within its possession, custody or control and will be identified if and when located.

## III.    COMPUTATION OF DAMAGES

Pursuant to Rule 26(a)(1)(C) of the Federal Rules of Civil Procedure, Defendant states that it is not claiming damages in this litigation.

## IV.    INSURANCE AGREEMENTS

Pursuant to Rule 26(a)(1)(D) of the Federal Rules of Civil Procedure, Defendant states that it has no such documents.

\*        \*        \*

Defendant expressly reserves the right to supplement the disclosures set forth herein, including the identification of individuals, and identification of additional documents and materials if such information comes to its attention through further investigation, discovery or otherwise.

Dated:  October 11, 2007
       New York, New York

                            MORRISON & FOERSTER LLP

                            By: _____
                                William J. Kuhne

                            Attorneys for Plaintiff
                            1290 Avenue of the Americas
                            New York, New York 10104
                            (212) 468-8000

                            Rachel Krevans, *admitted pro hac vice*
                            425 Market Street
                            San Francisco, CA 94105-2482
                            415.268.7000

## CERTIFICATE OF SERVICE

I, Rachel L. Quitkin, hereby certify that on this day, October 11, 2007, I caused a true and

correct copy of the Novartis Vaccines and Diagnostics, Inc.'s INITIAL DISCLOSURES to be

served via overnight mail upon the following:

> Barry J. Brett, Esq.
> Troutman Sanders LLP
> The Chrysler Building
> 405 Lexington Avenue
> New York, NY 10174

Attorneys for Plaintiff, Anthony Cerami

Dated:    New York, New York
          October 11, 2007

Rachel L. Quitkin, Esq.

# EXHIBIT - D



**Warren Pharmaceuticals, Inc.**
is a privately held biotech company incorporated in 2001 for the purpose
of developing proprietary tissue-protective technologies.

**Corporate Biograp**

**WARREN**

| HOME | OUR COMPANY | SCIENCE AND TECHNOLOGY | DISEASE AREAS | INTELLECTUAL ASSETS | CONT INFORM |
|---|---|---|---|---|---|

## Anthony Cerami, PhD

*Founder*
*Chief Executive Officer*
*Chairman of the Board of Directors*
*Member, Scientific Advisory Board*

Anthony Cerami, PhD is the founder of Warren Pharmaceuticals, Inc. and serves as its Chairn Board and CEO.

A member of the National Academy of Sciences and former dean of The Rockefeller Universit Cerami has had a successful career applying detailed biochemical insights to the design of no therapeutic strategies, translating scientific discovery into commercially viable products of high utility.

He received his PhD from The Rockefeller University in 1967 and completed postdoctoral fellc Harvard Medical School and at the Jackson Laboratory in Bar Harbor, Maine. Dr. Cerami serv as Professor and Head of the Laboratory of Medical Biochemistry and as Dean of Graduate ar Graduate Studies of Rockefeller University.

He established the Picower Institute for Medical Research in Manhasset, New York, in July 19 became its first president. He is a recipient of a number of awards, including the Luft Award in and the Banting Medal for Scientific Achievement, awarded by the American Diabetes Associa recognition of his lifelong work on diabetes.

Dr. Cerami has been the inventor or co-inventor on over 150 issued U.S. patents and hundred counterparts. He is the author or co-author of over 500 scientific publications, and is the co-inv anti-TNF monoclonal antibody that has been approved by the FDA for the treatment of Crohn': and rheumatoid arthritis.

Dr. Cerami is also the inventor of the hemoglobin A1c test that is used by diabetics worldwide.

# EXHIBIT - E

Warren Pharmaceuticals: Intellectual Assets                                    Page 1 of 4



**WARREN**

**Warren Pharmaceuticals, Inc.**
with its strategic partners is pursuing an offensive and defensive
intellectual property strategy to secure freedom to operate in the
*tissue protective cytokine* arena while preventing others from
approaching its proprietary platform.

- IP Overview
- Issued and Published Pate
- Current Alliances

| HOME | OUR COMPANY | SCIENCE AND TECHNOLOGY | DISEASE AREAS | INTELLECTUAL ASSETS | CONT INFORM |

| **IP Overview** | Warren Pharmaceuticals has an established patent strategy aimed at securing exclusivity in the arena of tissue protective cytokine technology. Numerous US and international applications have been filed seeking to protect Warren's novel tissue protective cytokines, and uses of tissue protective cytokines to protect, repair or enhance tissue function. |
|---|---|

To date, the U.S. Patent Office has since granted one of these patents, U.S. Patent No. 6,531,121, for the use of tissue protective cytokines based on asialo-erythropoietin to protect, repair and enhance tissue function.

**Issued and Published Patents**

| US Patent or US/PCT Publication Issue / Publication date Title | Summary |
|---|---|
| **U.S. Patent 6,531,121B2** <br> March 11, 2003 <br><br> *Protection and enhancement of erythropoietin-responsive cells, tissues and organs* | Methods and compositions are provided for protecting or enhancing erythropoietin-responsive cell, tissue, organ and bodily part function and viability in vivo, in situ or ex vivo in mammals including human beings by systemic or local administration of an erythropoietin receptor activity modulator, such as an erythropoietin |
| **WO0061164** <br> October 19, 2000 <br><br> *Modulation of excitable tissue function by peripherally administered erythropoietin* | Methods and compositions are provided for protecting or enhancing excitable tissue function in mammals by systemic administration of an erythropoietin receptor activity modulator, such as erythropoietin, which signals vi an EPO-activated receptor to modulate the function of excitable tissue. Excitable tissues include central neuronal tissues, such as the brain, peripheral neuronal tissues, retina, and heart tissue. Protection of excitable tissues provides treatment of hypoxia, seizure disorders, neurodegenerative diseases, hypoglycemia, and neurotox poisoning. Enhancement of function is useful in learning and memory. The invention is also directed to composition and methods for facilitating the transport of molecules across endothelial cell tight junction barriers, such as the blood-brain barrier, by association of molecules with an erythropoietin receptor activity modulator, such as an erythropoietin. |
| **WO0253580A2** <br> July 11, 2002 | Methods and compositions are provided for protecting or |

Warren Pharmaceuticals: Intellectual Assets

| | |
|---|---|
| *Protection, restoration, and enhancement of erythropoietin-responsive cells, tissues and organs* | enhancing an erythropoietin-responsive cell, tissue, organ or body part function or viability in vivo, in situ or ex vivo in mammals, including human beings, by systemic or local administration of an erythropoietin receptor activity modulator, such as an erythropoietin or a modified erythropoietin. |
| **US2003/0072737A1**<br>April 17, 2003<br><br>*Tissue protective cytokines for the protection, restoration, and enhancement of responsive cells, tissues and organs* | Methods and compositions are provided for protecting or enhancing a responsive cell, tissue, organ or body part function or viability in vivo, in situ or ex vivo in mammals, including human beings, by systemic or local administratio of a tissue protective cytokine |
| **US2003/0104988A1**<br>June 5, 2003<br><br>*Protection, restoration, and enhancement of erythropoietin-responsive cells, tissues and organs* | Methods and compositions are provided for protecting or enhancing an erythropoietin-responsive cell, tissue, organ or body part function or viability in vivo, in situ or ex vivo in mammals, including human beings, by systemic or local administration of an erythropoietin receptor activity modulator, such as an erythropoietin or a modified erythropoietin |
| **US2003/0134798A1**<br>July 17, 2003<br><br>*Protection and enhancement of erythropoietin-responsive cells, tissues and organs* | Methods and compositions are provided for protecting or enhancing erythropoietin-responsive cell, tissue, organ and bodily part function and viability in vivo, in situ or ex vivo in mammals including human beings by systemic or local administration of an erythropoietin receptor activity modulator, such as an erythropoietin |
| **WO0403176**<br>January 8, 2004<br><br>*Recombinant tissue protective cytokines and encoding nucleic acids thereof for protection, restoration, and enhancement of responsive cells, tissues, and organs* | Methods and compositions are provided for protecting or enhancing a responsive cell, tissue, organ or body part function or viability in vivo, in situ or ex vivo in mammals, including human beings, by systemic or local administratio of an erythropoietin receptor activity modulator, such as ar recombinant tissue protective cytokine. |
| **WO0404656**<br>January 15, 2004<br><br>*Tissue protective cytokines for the protection, restoration, and enhancement of responsive cells, tissues and organs* | Methods and compositions are provided for treating a mammal having inflammation by protecting or enhancing a responsive cell, tissue, organ or body part exhibiting or associated with the inflammation, by systemic or local administration of a composition comprising a tissue protective cytokine. The invention also encompasses combination treatments comprising administering a composition comprising a tissue protective cytokine of the |

Warren Pharmaceuticals: Intellectual Assets                              Page 3 of 4

|  | invention and administering at least one anti-inflammatory or least one immunomodulatory agent. |
|---|---|
| **WO0422577**<br>March 18, 2004<br><br>*Long acting erythropoietins that maintain tissue protective activity of endogenous erythropoietin* | Methods for increasing the hematocrit of an individual whil maintaining the tissue protective activities of endogenous through the administration of a pharmaceutical compound containing chemically modified long acting erythropoietin. Also disclosed are the new chemically modified long actin erythropoietins, methods of producing the chemically modified long acting erythropoietins, and compositions comprising the chemically modified long acting erythropoietins. |
| **WO2004/096148**<br>November 11, 2004<br><br>*Methods for identifying compounds that have a tissue protective activity using a heteromultimer receptor complex that mediates the tissue protective activities.* | The complex consists of at least one EPO-R in complex with at least one ßc Receptor. These compounds used in the assays to identify tissue protective compounds include but are not limited to, small molecules and biologics. The compounds identified using these assays can be used to treat or prevent various diseases, disorders, or conditions of the central and peripheral nervous systems as well as those of other erythropoietin-responsive or excitable cells, tissues, and organs. |
| **WO2004/112693**<br>December 29, 2004<br><br>*Tissue protective cytokines with an extended therapeutic window* | Methods and uses for a pharmaceutical composition with an erythropoietin or a tissue protective cytokine for protecting or restoring function to a responsive cell, tissue, organ or body part function or viability in mammals when administered outside of the therapeutic window of previously approved therapeutics. |
| **WO2005/025606**<br>March 24, 2005<br><br>*Long acting erythropoietins that maintain tissue protective activity of endogenous erythropoietin* | Methods for increasing the hematocrit of an individual whil maintaining the tissue protective activities of endogenous erythropoietin through the administration of a pharmaceutical compound containing chemically modified long acting erythropoietin. Also disclosed are the new chemically modified long acting erythropoietins, methods c producing the chemically modified long acting erythropoietins, and compositions comprising the chemically modified long acting erythropoietins. |
| **WO2005/032467**<br>April 14, 2005<br><br>*Tissue protective cytokines for the treatment and prevention of sepsis and the formation of adhesions* | A method of treating, preventing, delaying the onset, and/c reducing the effects of proinflammatory cytokines in conditions including, but not limited to, sepsis, adhesion formation, wounds, organ failure, chronic disease, general inflammatory conditions resulting from infection, scarring resulting from injury and incisions, and combinations thereof. |
| **WO 2005/084364**<br>September 15, 2005<br><br>*Long acting tissue* | Methods and compositions are provided for protecting or enhancing a responsive cell, tissue, organ or body part function or viability in vivo, in situ or ex vivo in mammals, including human beings, by systemic or local administratio |

Warren Pharmaceuticals: Intellectual Assets

| | |
|---|---|
| *protective cytokines for the protection, restoration, and enhancement of responsive cells, tissues and organs* | of a long acting tissue protective cytokine. In particular, the long acting tissue protective cytokines of the present invention relate to modified long acting erythropoietins exhibiting a tissue protective effect without an erythropoiet related activity. |
| **WO 2005/117927** December 15, 2005<br><br>*Tissue protective cytokines with an extended therapeutic window* | Methods and uses are provided for a pharmaceutical composition with an erythropoietin or a tissue protective cytokine for protecting or restoring function to a responsive cell, tissue, organ or body part function or viability in mammals when administered outside of the therapeutic window of previously approved therapeutics. |
| **WO 2006/014466** February 9, 2006<br><br>*Novel carbamylated epo and method for its production* | The present invention comprises an optimal process for carbamylation yielding a product with a low degree of polymerisation and aggregation. The fully carbamylated erythropoietin with all of the N-terminal and all lysine residues was obtained. The resulting fully carbamylated pure EPO is along with pharmaceutical compositions comprising the compound are part of the invention. |

Return to top of page