Michael J. Friedman
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York
Tel:    (212) 294-6700
Fax:    (212) 294-4700

*Counsel for Abbott Laboratories*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
|  | : | 1:07-CV-05634-AKH-DFE |
| DR. ANTHONY CERAMI, |  |  |
|  | : |  |
| Plaintiff, |  |  |
|  | : |  |
| - against - |  |  |
|  | : |  |
| NOVARTIS AG and NOVARTIS VACCINES AND DIAGNOSTICS, INC., |  |  |
|  | : |  |
| Defendant. | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**<u>MEMORANDUM OF LAW IN SUPPORT OF ABBOTT LABORATORIES'
MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF REQUESTING A
PROTECTIVE ORDER</u>**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ............................................................................................................. 1

II.  FACTUAL BACKGROUND ........................................................................................... 1

III.  ARGUMENT .................................................................................................................. 3

    A.    ABBOTT MAY INTERVENE IN THIS MATTER AS A MATTER OF
        RIGHT .................................................................................................................. 4

        1.    Abbott's Application is Timely ............................................................... 4

        2.    Abbott Has an Interest in This Litigation ............................................... 6

        3.    Abbott's Interest May Be Impaired by the Disposition of This
            Action ..................................................................................................... 6

        4.    Abbott's Interest Is Not Adequately Represented by Another Party
            to This Action ........................................................................................ 6

    B.    ABBOTT MAY INTERVENE UNDER THE PERMISSIVE
        INTERVENTION PROVISIONS OF FEDERAL RULE 24(B)(2). ...................... 7

    C.    THIS COURT SHOULD ENTER A PROTECTIVE ORDER
        PREVENTING DISCLOSURE OF THE LITIGATION AND
        ARBITRATION DOCUMENTS OR, IN THE ALTERNATIVE,
        LIMITING THEIR DISCLOSURE TO OUTSIDE COUNSEL OF
        RECORD. .............................................................................................................. 8

        1.    The Litigation and Arbitration Documents Are Irrelevant And
            Should Not Be Disclosed. ....................................................................... 9

        2.    Access To The Litigation And Arbitration Documents Should At
            The Very Least Be Limited To Outside Counsel Of Record. .................. 10

            A.  The Information Which Abbott Seeks to Protect is Not Known ....... 11

            B.  The Information Which Abbott Seeks to Protect is Not Known......... 12

            C.  The Information is Highly Valuable to Abbott and its
               Competitors ................................................................................. 13

IV.  CONCLUSION .............................................................................................................. 15

## TABLE OF AUTHORITIES

**CASES**

*Am. Standard, Inc. v. Pfizer, Inc.*,
  No. 87-1-73-IP, 1988 U.S. Dist. LEXIS 16080 (S.D. Ind. July 8, 1988) ...............................15

*AT&T Corp v. Sprint Corp.*,
  407 F.3d 560 (2d Cir. 2005).........................................................................................8

*Bayer AG v. Barr Labs., Inc.*,
  162 F.R.D. 456 (S.D.N.Y. 1995) ................................................................................15

*Blum v. Schlegel*,
  150 F.R.D. 38 (W.D.N.Y. 1993).............................................................................6, 9

*Brandwynne v. Combe Int'l Ltd.*,
  No. 98-2653, 1998 U.S. Dist. LEXIS 16888 (S.D.N.Y. Oct. 28, 1998)..................................14

*Buzoiu v. Risk Mgmt. Alternatives, Inc.*,
  No. 03-3579, 2004 U.S. Dist. LEXIS 11838 (E.D. Pa. April 5, 2004)...................................11

*C.A. Muer Corp. v. Big River Fish Co.*,
  No. 97-5402, 1998 U.S. Dist. LEXIS 12639 (E.D. Pa. Aug. 10, 1998) ...............................11

*Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*,
  No. 06-2875, 2007 U.S. Dist. LEXIS 66584 (S.D.N.Y. Sept. 7, 2007)........................... 4-5, 7

*Cook Inc. v. Boston Scientific Corp.*,
  206 F.R.D. 244 (S.D. Ind. 2001)..............................................................................14

*Deitchman v. E.R. Squibb & Sons, Inc.*,
  740 F.2d 556 (7th Cir. 1984) ..................................................................................11

*EEOC v. Nat'l Children's Center, Inc.*,
  146 F.3d 1042 (D.C. Cir. 1998)..................................................................................8

*Favale v. Roman Catholic Diocese of Bridgeport*,
  233 F.R.D. 243 (D. Conn. 2005)................................................................................9

*Havens v. Metro. Life Ins. Co.*,
  94-1402, 1995 U.S. Dist. LEXIS 5183 (S.D.N.Y. April 20, 1995) .........................................8

*Infosint S.A. v. Lundbeck A.S.*,
  No. 06-2869, 2007 U.S. Dist. LEXIS 36678 (S.D.N.Y. May 16, 2007) ...........................11, 14

*Lovely H. v. Eggleston*,
    No. 05-6920, 2006 U.S. Dist. LEXIS 83424 (S.D.N.Y. Nov. 15, 2006)...................................7

*Micro Motion, Inc. v. Kane Steele Co.*,
    894 F.2d 1318 (Fed. Cir. 1990)................................................................................................9

*O'Bar v. Borough of Naugatuck*,
    No. 01-867, 2002 U.S. Dist. LEXIS 27372 (D. Conn. April 8, 2002)......................................9

*Schiller v. The City of New York*,
    No. 04-7922, 2006 U.S. Dist. LEXIS 70479 (S.D.N.Y. Sept. 27, 2006)..................................8

*Sullivan Mktg. v. Valassis Communications, Inc.*,
    No. 93-6350, 1994 U.S. Dist. LEXIS 5824 (S.D.N.Y. May 5, 1994) .....................................14

*Torah Soft Ltd. v. Drosnin*,
    No. 00-0676, 2001 U.S. Dist. LEXIS 18614 (S.D.N.Y. Nov. 14, 2001)..............................4, 6

*Tottenham v. Trans World Gaming Corp.*,
    No. 00-7697, 2002 U.S. Dist. LEXIS 11313 (S.D.N.Y. June 21, 2002) ..................................9

## OTHER AUTHORITIES

Fed. R. Civ. P. 24(a), (b)..............................................................................................................3

Fed. R. Civ. P. 26(a), (c) .....................................................................................................Passim

## I. INTRODUCTION

Abbott Laboratories ("Abbott') respectfully seeks permission to intervene for the limited purpose of requesting a protective order under Fed. R. Civ. P. 26(c), barring production of certain highly sensitive arbitration documents that are irrelevant to this case, or, in the alternative, restricting access to those documents to Outside Counsel of Record Only.

## II. FACTUAL BACKGROUND

As stated in Plaintiff's complaint in this matter, Abbott has developed and sells "HUMIRA® ," an FDA-approved pharmaceutical product. (Cerami Complaint, ¶ 19b.) In 2004, Chiron Corporation, a predecessor of Novartis, and The Rockefeller University, sued Abbott for patent infringement in a lawsuit styled *The Rockefeller University and Chiron Corporation v. Centocor, Inc. and Abbott Laboratories*, No. 2:04-168 (TJW) (the "Texas litigation"), alleging that HUMIRA and various uses of it infringed two patents on which Plaintiff Cerami was named as an inventor. (*Id.*, ¶¶ 17, 22.)

Sensitive confidential information, including Abbott-proprietary and confidential information regarding HUMIRA, was produced during pretrial discovery (the "Litigation Documents"). That confidential information remains subject to the terms of a protective order issued in the Texas litigation, (*see* Exhibit B; *see also*, Exhibit C, at 3.),[1] which protects the disclosure of "all information that…constitutes or discloses or relates to processes, operations, research, technical or developmental information, production, marketing, sales, shipments or other proprietary data of commercial value, including but not limited to trade secrets." (Exhibit

---

[1] "Exhibits" refers to the exhibits attached to the "Declaration of Kevin E. Warner in Support of Proposed Intervenor Abbott Laboratories' Motion to Intervene for the Limited Purpose of Requesting a Protective Order," dated November 16, 2007, and submitted herewith.

B, ¶1(a).)  The protective order limited disclosure of such information to outside counsel, the court, specified in-house counsel, and retained experts who agree to the terms of the order.

Prior to trial in the Texas litigation, Novartis, The Rockefeller University and Abbott agreed to dismiss the parties' claims and submit their dispute to binding arbitration.  (Cerami Complaint, ¶ 25.)  The full terms of the arbitration agreement between the parties are set forth in various confidential agreements (the "Arbitration Documents").  (*Id.*, ¶ 27.)  Each of those documents and the related conduct of the arbitration were and are confidential.  And with good reason.  These documents contain confidential information related to the resolution of the Texas litigation.  Since the end of the arbitration, Abbott has taken all reasonable steps to maintain the confidentiality of the Arbitration Documents.  Abbott has not disclosed that information to anyone not permitted access within the terms of the Documents themselves.

On November 1, 2007, counsel for Novartis notified Abbott by letter that Novartis was bound to disclose certain of the Arbitration Documents.  Those are identified in Novartis's initial disclosures in this case as "The settlement agreements with…Abbott and related documentation, which are subject to confidentiality agreements."   (Exhibit C, at 3.)  Additionally, Novartis listed in its initial disclosures in this action, "Certain documents to the TNF litigation that are currently subject to the protective order entered therein."  (*Id.*)  Abbott believes many of the Litigation Documents fall within this category.

The Litigation and Arbitration Documents are irrelevant to the case.  Every one of Plaintiff Cerami's claims for relief revolves centrally around the Defendants' obligations under a 1985 License Agreement between Chiron and Rockefeller with respect to payments from Novartis to Cerami.   Cerami's claims bear no relationship to Abbott's ***own*** confidential

information contained in the Litigation Documents, or the confidential information contained in the Arbitration Documents.

Apart from being irrelevant, the disclosure of those documents would be competitively detrimental to Abbott – who is not even a party to this litigation.  Disclosure of the these documents to the public would put significant confidential, competitive information in the hands of Abbott's competitors, some of whom are currently waging patent infringement lawsuits against Abbott and its HUMIRA product.  Even disclosure to Dr. Cerami would be highly prejudicial.  He is an inventor who has been all too eager to join with patent holders to enforce his patents against Abbott, having done so in the Texas litigation.  Dr. Cerami is also now an executive officer of a pharmaceutical business.  (Exhibit D.)  Disclosure to Dr. Cerami or any other entity would thus severely prejudice Abbott by making public valuable and confidential information.

Abbott therefore respectfully requests permission to intervene to seek a protective order prohibiting disclosure of the Litigation and Arbitration Documents.  In the alternative, Abbott respectfully requests that this Court enter the Protective Order attached hereto as Exhibit A, which would limit the disclosure of materials deemed relevant to outside counsel of record in this matter.

## III.  ARGUMENT

Abbott is entitled to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a), or, in the alternative, seek permissive intervention pursuant to Fed. R. Civ. P. 24(b).  Abbott does so for the sole purpose of requesting a protective order pursuant to Fed. R. Civ. P. 26(c), which should be granted to protect irrelevant but confidential competitive information contained in the Litigation and Arbitration Documents.

## A.    ABBOTT MAY INTERVENE IN THIS MATTER AS A MATTER OF RIGHT

"Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."  Fed. R. Civ. P. 24(a)(2).  An applicant seeking intervention under Rule 24(a)(2) must "satisfy four elements: '(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action.'" *Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*, No. 06-2875, 2007 U.S. Dist. LEXIS 66584, at *5 (S.D.N.Y. Sept. 7, 2007) (quoting *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197 (2d Cir. 2000)); *see also Torah Soft Ltd. v. Drosnin*, No. 00-0676, 2001 U.S. Dist. LEXIS 18614, at *4-*5 (S.D.N.Y. Nov. 14, 2001).  Abbott's "well pleaded allegations must be accepted as true for purposes of considering a motion to intervene, with no determination made as to the merits of the issues in dispute."  *Cole Mech. Corp.*, 2007 U.S. Dist. LEXIS 66584, at *6 (quoting *Herman v. New York Metro Area Postal Union*, No. 97-6839, 1998 U.S. Dist. LEXIS 6289, at *1 (S.D.N.Y. Apr. 30, 1998)).

Abbott clearly satisfies each of these requirements.

### 1.    Abbott's Application is Timely

Abbott's motion is unquestionably timely.  To come to that conclusion, there are several factors that a court should consider:  "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating

for or against a finding of timeliness." *Cole Mech. Corp.*, 2007 U.S. Dist. LEXIS 66584, at *7 (quoting *In re Bank of New York Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003)).  All of these factors counsel in favor of granting Abbott's application to intervene.

First, Abbott was notified of Novartis's requirement to produce various Arbitration Documents, and its potential obligation to produce various Litigation Documents, in a letter dated November 1, 2007.  The parties have since that time engaged in discussions with the aim of coming to an agreement regarding the production and/or protection of the Litigation and Arbitration Documents, but have been unable to do so despite their good faith efforts.  Given its efforts at reaching an agreement without drawing upon the resources of this Court, and the fact that production of the materials in question has yet to take place,  Abbott has filed this motion with all due expedience.

Second, because there has been no delay in Abbott's filing of this motion, neither Novartis nor Cerami will be prejudiced by Abbott's intervention.  Abbott seeks leave to intervene only for the limited purpose of requesting a protective order at the beginning of fact discovery.  Abbott's understanding is that document production in this case is only just beginning.  More importantly, since the Litigation and Arbitration documents have not been produced at this point, no party has any basis for claiming prejudice, as a protective order would not now create a "recall" of already discovered materials.

On the other hand, Abbott *will* be severely prejudiced if its motion to intervene is denied. Intervention is the only means by which Abbott may seek to maintain the confidentiality of the Litigation and Arbitration Documents and protect from public disclosure confidential competitive information.

Finally, there are no unusual circumstances that would militate against a finding of timeliness on this motion.

### 2.    Abbott Has an Interest in this Litigation

Assuming, as this Court should on a motion to intervene, that the documents at issue do contain confidential information in which Abbott has a legitimate interest in protecting, that is enough to establish an interest in the subject matter of this litigation.  *Torah Soft Ltd.*, 2001 U.S. Dist. LEXIS 18614, at *5-*6 (citing *Blum v. Schlegel*, 150 F.R.D. 38, 39 (W.D.N.Y. 1993) (granting intervention of third party for limited purpose of protecting her interest in confidentiality of information sought by plaintiff in discovery)).  There is no dispute about the confidential nature of the materials, as even Novartis has characterized them as such in its Initial Disclosures.  (*See* Exhibit C, at 3.)

### 3.    Abbott's Interest May Be Impaired by the Disposition of this Action

If Novartis produces the Litigation and Arbitration Documents without the benefit of a protective order, the terms of both the protective order in the Texas litigation and the confidentiality provisions of the arbitration will be breached, and Abbott's confidential and proprietary information could be revealed to the public.  That legitimate interest in protecting confidentiality will clearly be impaired if leave to intervene is not granted.  *See Torah Soft Ltd.*, 2001 U.S. Dist. LEXIS 18614, at *6.

### 4.    Abbott's Interest is not Adequately Represented by Another Party to This Action

While Novartis is a party to the protective order in the Texas Litigation and the Arbitration Documents that by their terms maintain confidentiality, Novartis does not have the same interest as Abbott in protecting information deemed confidential by *Abbott*.  Thus, Novartis cannot adequately protect Abbott's confidentiality interest in the Litigation or Arbitration

Documents. *See Cole Mech. Corp.*, 2007 U.S. Dist. LEXIS 66584, at *9 (finding that intervenor's interest was not adequately protected by a related party with different incentives). And because Dr. Cerami has no identifiable interest in protecting Abbott's confidential information, there is no reason to expect that he would.

For the foregoing reasons, this Court should grant Abbott's application for leave to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2).

### B.    ABBOTT MAY INTERVENE UNDER THE PERMISSIVE INTERVENTION PROVISIONS OF FEDERAL RULE 24(B)(2).

Even if Abbott were deemed unable to intervene in this matter as of right – contrary to the analysis provided above – Abbott should alternatively be granted permissive intervention under Federal Rule 24(b)(2). That Rule provides that, "[u]pon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(2). Courts considering permissive intervention may consider substantially the same factors under Fed. R. Civ. P. 24(b)(2) as they do under Fed. R. Civ. P. 24(a)(2), as detailed above. *Cole Mech. Corp.*, 2007 U.S. Dist. LEXIS 66584, at *5-*6. Court's have also held that the test under Rule 24(b)(2) "is a flexible and discretionary one, and courts generally look at all four factors as a whole rather than focusing narrowly on any one of the criteria." *Id.* (quoting *Tachiona ex rel Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 394 (S.D.N.Y. 2002)). Furthermore, "[c]ourts in this District have held that Rule 24(b)(2) should be construed liberally." *Lovely H. v. Eggleston*, No. 05-6920, 2006 U.S. Dist. LEXIS 83424, at *8 (S.D.N.Y. Nov. 15, 2006).

Applying the principles discussed above, it has been duly recognized that permissive intervention under Fed. R. Civ. P. 24(b)(2) is appropriate when an applicant seeks leave to intervene for the limited purpose of securing or modifying a protective order, as Abbott is seeking to do in this case.  *See AT&T Corp v. Sprint Corp.*, 407 F.3d 560, 561-62 (2d Cir. 2005) ("We have stated that permissive intervention is the proper method for a nonparty to seek a modification of a protective order."); *EEOC v. Nat'l Children's Center, Inc.*, 146 F.3d 1042, 1043 (D.C. Cir. 1998) (holding that district court abused its discretion by denying motion for permissive intervention for limited purpose of modifying protective order); *Schiller v. The City of New York*, No. 04-7922, 2006 U.S. Dist. LEXIS 70479, at *5 (S.D.N.Y. Sept. 27, 2006) (noting that the court need not consider intervention as of right because permissive intervention was proper to seek modification of the protective order); *Havens v. Metro. Life Ins. Co.*, No. 94-1402, 1995 U.S. Dist. LEXIS 5183, at *13 (S.D.N.Y. April 20, 1995) (discussing a lack of clarity as to whether intervenors should proceed under subsection (a) or (b) in order to seek modification of a protective order, and settling on subsection (b) for the purposes of that case).

For the foregoing reasons, this Court should grant Abbott's application for leave for permissive intervention under Fed. R. Civ. P. 24(b).

## C.   THIS COURT SHOULD ENTER A PROTECTIVE ORDER PREVENTING DISCLOSURE OF THE LITIGATION AND ARBITRATION DOCUMENTS OR, IN THE ALTERNATIVE, LIMITING THEIR DISCLOSURE TO OUTSIDE COUNSEL OF RECORD ONLY.

In addition to granting Abbott the right to intervene, this Court should grant Abbott's request for a protective order.  There is no reasonable dispute that Abbott's request to protect the disclosure of the irrelevant and highly sensitive Litigation and Arbitration Documents falls within the ambit of the protections afforded by Federal Rule of Civil Procedure 26(c).

1.    **The Litigation And Arbitration Documents Are Irrelevant And Should Not Be Disclosed..**

While the Federal Rules of Civil Procedure allow for broad discovery, this right to discovery is not unlimited. *Micro Motion, Inc. v. Kane Steele Co.,* 894 F.2d 1318, 1322 (Fed. Cir. 1990). Rule 26(c) provides that, upon a showing of good cause, a Court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that the disclosure or discovery not be had[, and] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(1), (7). Among other things, Rule 26(c) is designed to permit protection against the disclosure of irrelevant information, acting in that sense as a protector of Rule 26(a)'s requirement that discovery be had only of information that is "*relevant* to the claim or defense of any party…." Fed. R. Civ. P. 26(b)(1); *see also Favale v. Roman Catholic Diocese of Bridgeport*, 233 F.R.D. 243, 247 (D. Conn. 2005) (granting protective order barring discovery of certain categories of documents which the court found irrelevant to the merits of the action); *O'Bar v. Borough of Naugatuck*, No. 01-867, 2002 U.S. Dist. LEXIS 27372, at *6-*7 (D. Conn. April 8, 2002) (issuing a protective order barring discovery of certain files where the party seeking discovery had failed to demonstrate their relevance); *Tottenham v. Trans World Gaming Corp.*, No. 00-7697, 2002 U.S. Dist. LEXIS 11313, at *3-*4 (S.D.N.Y. June 21, 2002) (limiting discovery because it "is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support"); *Blum v. Schlegel*, 150 F.R.D. 38, 42 (W.D.N.Y. 1993) (granting permissive intervention and barring discovery under Rule 26(c)(1) of files that were irrelevant to the claims in the action).

The Litigation Documents at issue in this motion bear no degree of relevance to any claims of Plaintiff Cerami. His three causes of action – breach of contract, unjust enrichment and request for declaratory relief – all focus on Novartis's failure to honor its obligations as set forth in the 1985 License Agreement between Defendants and The Rockefeller University. Any claim for damages that Cerami may have will be based upon the terms of that agreement. The confidential and proprietary documents produced by *Abbott* in the Texas litigation, and which relate to the HUMIRA®  product, are not relevant to any issues in this case, nor are they likely to lead to the discovery of relevant information. The same is true with any Arbitration Documents that are entirely unrelated to Dr. Cerami's contributions to the Texas litigation. There simply is no existing internal and confidential Abbott information that relates in any relevant way to Dr. Cerami's role in the Texas litigation or following dismissal of that litigation. Consequently, this Court should enter a protective order prohibiting the disclosure of the Litigation and Arbitration Documents.

> **2.    Access To The Litigation And Arbitration Documents Should At The Very Least Be Limited To Outside Counsel Of Record Only.**

Even if it were argued – contrary to fact – that the Litigation and Arbitration Documents were relevant, those materials constitute confidential information that should nevertheless not be disclosed beyond outside counsel of record in this matter.

Federal Rule 26(c), in addition to precluding the production of irrelevant information, also protects against unnecessary disclosure of "trade secret or other confidential research, development, or commercial information…." Fed. R. Civ. P. 26(c)(7). "Protective orders limiting access to highly confidential information to counsel and experts 'are commonly entered in litigation involving trade secrets and other confidential research, development, or commercial

information." *Infosint S.A. v. Lundbeck A.S.*, No. 06-2869, 2007 U.S. Dist. LEXIS 36678, at *2 (S.D.N.Y. May 16, 2007).

In each case, to determine whether the disclosure of such information should be prohibited or limited, Courts seek to determine "1) the extent to which the information is known outside the business; 2) the extent to which information is known to those inside the business; 3) the measures taken to guard the secrecy of the information; and 4) the value of the information to the business and its competitors." *Infosint S.A.*, 2007 U.S. Dist. LEXIS 36678, at *6. Ultimately, the court must conduct a balancing of sorts, and should grant the requested relief when the need for protection outweighs the interest in full disclosure. *See id.* at *8; *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 559 (7th Cir. 1984) ("The court must apply a balancing test to determine whether the need of the party seeking disclosure outweighs the adverse effect such disclosure would have on the policies underlying the claimed [confidentiality]") (internal quotations, citation and alterations omitted); *Buzoiu v. Risk Mgmt. Alternatives, Inc.*, No. 03-3579, 2004 U.S. Dist. LEXIS 11838, at *9 (E.D. Pa. April 5, 2004) (finding that the movant had "met its burden of showing that the competitive injury from the disclosure of its files outweighs the public benefit of disclosure"); *C.A. Muer Corp. v. Big River Fish Co.*, No. 97-5402, 1998 U.S. Dist. LEXIS 12639, at *7 (E.D. Pa. Aug. 10, 1998) ("When the risk of harm to the owner of . . . confidential information outweighs the need for discovery, disclosure [through discovery] cannot be compelled.") (quotations, citation, and alterations omitted). The interests in protecting the requested materials in this case heavily outweighs the interest in the disclosure of those materials, which contain highly sensitive, commercially competitive information.

A.   **The Information Which Abbott Seeks to Protect is Not Known Outside of Abbott and/or Authorized Parties Under The Arbitration Documents**

The Litigation Documents remain the subject of a protective order limiting their use to purposes related to the Texas litigation.  (Exhibit B, at ¶ 9.)  To Abbott's knowledge, Novartis has not previously disclosed this material, and Abbott itself closely guards this proprietary information from the eyes of competitors and the public.

Likewise, to the best of Abbott's knowledge, the information contained in the Arbitration Documents is not known outside of any parties who have gained authorized access pursuant to the terms contained therein.  Indeed, it was precisely those confidentiality provisions that prompted Novartis to provide notice to Abbott of the scheduled disclosure in the first instance. The contents of the documents do not contain information that is otherwise publicly available. And, to the best of Abbott's knowledge, all parties have complied with the confidentiality provisions up until this time.  The scope of their disclosure to this point has been extraordinarily limited and has not gone beyond the very parties to the Agreement and their counsel in the Texas litigation.

**B.    The Information Which Abbott Seeks to Protect is Not Known Inside Abbott Beyond The Degree Necessary to Carry Out Abbott's Operations.**

The contents of the Litigation Documents are not widely known within Abbott.  Such sensitive commercial, financial, and technical information is only known within Abbott on an as needed basis.  As to the Arbitration Documents, Abbott has maintained a program of limited disclosure within Abbott, and only pursuant to the terms of the Arbitration Documents themselves.  The only Abbott personnel who have been given access to that information are various personnel who were granted authorized access pursuant to the terms of the agreement. Further, the contents of the documents do not contain information that employees of Abbott would otherwise possess.  Abbott has also taken various measures to ensure that no persons other

than those with authorized access pursuant to the terms of the Confidentiality Agreement have had access to it.

### C.     The Information is Highly Valuable to Abbott and its Competitors

The information contained in the Litigation and Arbitration Documents, as described above, is valuable to Abbott and – more relevant to the requests made herein – Abbott's competitors.  The Litigation Documents contain such information as the details of HUMIRA® 's development and various financial information relevant to that development, as well as highly confidential, commercially sensitive information.   The Arbitration Documents also contain confidential information related to the terms of the resolution of the Texas litigation.

Abbott will suffer significant competitive harm if the information is released to its rivals. Armed with this information, future competitors and patent litigants will have obtained information relevant to Abbott's valuation of litigation and the mechanisms by which it has chosen in the past to resolve litigation disputes.  The materials would also reveal information about the values that Abbott has in the past placed on patent disputes and the employed arbitration procedures agreed to by Abbott.  In short, Abbott will suffer precisely the types of harm that Fed. R. Civ. P. 26(c)(1) and (7) are intended to prevent.

The value of the Litigation Documents in question to Dr. Cerami is particularly relevant. As Cerami alleges, he has been actively involved in patent litigation against Abbott.  His Complaint states that he "performed services for Chiron for many years and his activities led directly to the receipt by defendants of enormous benefits." (Cerami Complaint, 2nd unnumbered paragraph.)  To the extent Dr. Cerami continues that trend in the future, the competitively sensitive information contained in the Litigation documents would provide enormous benefit to Dr. Cerami.  And the possibility of future competition by Dr. Cerami is not unimaginable

speculation.  In addition to the work he has done with Novartis, Dr. Cerami is currently the Board Chairman and Chief Executive Officer of Warren Pharmaceuticals, a company that has a purported patent arsenal and "patent strategy aimed at securing exclusivity in the arena of tissue protective cytokine technology."  (Exhibit E.)  Given his past involvement in the prosecution and enforcement of pharmaceutical patents, supplying the confidential Litigation Documents to Dr. Cerami would create a particularly unacceptable risk of harm to Abbott.

Thus, to the extent that this Court finds that discovery of the Litigation and Arbitration Documents is necessary, Abbott requests the Court to enter the proposed Protective Order attached as Exhibit A.  That Order contains the following critical provisions.  First, the Litigation and Arbitration Documents deemed confidential by Abbott would be designated and treated as "Highly Confidential – Outside Counsel's Eyes Only."

Second, the Litigation and Arbitration Documents deemed confidential by Abbott would not be disclosed to outside experts or at trial without providing notice and an opportunity for Abbott to object to such disclosure.  *See Infosint S.A.*, 2007 U.S. Dist. LEXIS 36678, at *14-*16 (limiting access to highly confidential information to trial counsel and barring access to competitive decision maker involved in patent prosecution); *Cook Inc. v. Boston Scientific Corp.*, 206 F.R.D. 244, 249 (S.D. Ind. 2001) (noting that proprietary business and financial information may be restricted to outside counsel's eyes only) *Brandwynne v. Combe Int'l Ltd.*, No. 98-2653, 1998 U.S. Dist. LEXIS 16888, at *4 (S.D.N.Y. Oct. 28, 1998); *Sullivan Mktg. v. Valassis Communications, Inc.*, No. 93-6350, 1994 U.S. Dist. LEXIS 5824, at *8-*9 (S.D.N.Y. May 5, 1994) (noting that exclusion of in-house counsel will cause minimal prejudice where trial counsel is retained and has been involved in the action from the beginning); *Am. Standard, Inc.*

*v. Pfizer, Inc.*, No. 87-1-73-IP, 1988 U.S. Dist. LEXIS 16080, at *10-*11 (S.D. Ind. July 8, 1988) (restricting sales information and patent royalty rate to outside counsel).

Third, to the extent the documents are intended to be used in Court filings, they would be filed under seal, and the use of such documents would be limited to the purposes of this particular action. Further, such documents would be destroyed upon conclusion of this litigation. "These provisions are typical in confidentiality agreements and orders, particularly in cases between business competitors . . . ." *Bayer AG v. Barr Labs., Inc.*, 162 F.R.D. 456, 458 (S.D.N.Y. 1995); *see also Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, No. 07-2352, 2007 U.S. Dist. LEXIS 37306, at *27 (S.D.N.Y. May 23, 2007) (discussing enforceability of protective orders prohibiting use of materials in future litigation); *Burns*, No. 03-1685, 2007 U.S. Dist. LEXIS 40037, at *50 (limiting access to those employees with knowledge of the facts and ordering that information be used only for that litigation and be destroyed upon conclusion of the action).

## IV. CONCLUSION

For the reasons stated above, Abbott respectfully requests that this Court grant Abbott's Motion to Intervene in its entirety and enter a protective order prohibiting the disclosure of the Litigation and Arbitration documents produced during pretrial discovery in *The Rockefeller University and Chiron Corporation v. Centocor Inc. and Abbott Laboratories*, Civil Action No. 2-04CV-168-TJW, and related to the dismissal and arbitration of that litigation. Alternatively, Abbott requests that this Court enter the proposed Protective Order attached hereto as Exhibit A.

Respectfully submitted,

ABBOTT LABORATORIES

/s/ Michael J. Friedman
Michael J. Friedman
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York
Tel:    (212) 294-6700
Fax:    (212) 294-4700

*Counsel for Abbott Laboratories*


Of Counsel

George C. Lombardi
James F. Hurst
Kevin E. Warner
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Tel:    (312) 558-5600
Fax:    (312) 558-5700

## CERTIFICATE OF SERVICE

I, Kevin E. Warner, hereby certify that on this day, November 16, 2007, I caused a true

and correct copy of the foregoing document to be served via e-mail upon the following:

Barry Brett, Esq.
Troutman Sanders, LLP
405 Lexington Avenue
New York, NY 10174
Barry.brett@troutmansanders.com

*Counsel for Dr. Cerami*

William Kuhne, Esq.
Morrison Foerster
1290 Avenue of the Americas
New York, NY 10104-0050
WKuhne@mofo.com

*Counsel for Novartis AG and*
*Novartis Vaccines & Diagnostics*

_____/s/ Kevin E. Warner_____
         Kevin E. Warner