**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------x

DR. ANTHONY CERAMI,

               Plaintiff,

      -against-

NOVARTIS AG and
NOVARTIS VACCINES AND DIAGNOSTICS,
INC.,

            Defendants.

-----------------------------------------------x

1:07-CV-05634-AKH-DFE

**ECF CASE**

## STIPULATED PROTECTIVE ORDER

**WHEREAS**, preparation for trial and trial of the above-captioned action may require the discovery, production and use of documents, electronically-stored information and/or other materials that contain confidential, trade secret and/or proprietary business information; and

**WHEREAS**, good cause exists for the entry of a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

    1.  As used herein, the "Action" shall mean the lawsuit captioned <u>Dr. Anthony Cerami v. Novartis AG and Novartis Vaccines And Diagnostics, Inc.</u>, 1:07-CV-05634-AKH-DFE (S.D.N.Y).

    2.  The term "Confidential Materials" as used in this Order shall mean (a) documents, electronically-stored information and/or other materials produced by a Party or a non-party to the action who so elects and agrees to be bound by the terms and conditions of this

Protective Order by signing Exhibit "A" (the "Producing Party") that are reasonably believed by a Party or, if a non-party, the Producing Party to constitute or contain, or that would disclose, confidential, trade secret and/or proprietary business information maintained or used by that Party or Producing Party (the "Designating Party"), (b) any documents, electronically-stored information and/or other materials that the Parties agree are subject to this Protective Order, (c) any documents, electronically-stored information and/or other materials that the Court directs to be produced subject to this Protective Order, (d) any documents, electronically-stored information and/or other materials designated as "Confidential Information" under the Stipulated Protective Order entered in *The Rockefeller University et al. v. Centocor, Inc. et al.*, Civil Action No. 2-04CV-168-TJW (E.D. Tex.) ("Patent Litigation"), and (e) any copies or other reproductions, excerpts, summaries, abstracts and/or documents that paraphrase, excerpt or contain Confidential Materials. Nothing herein shall preclude a Designating Party from seeking a further protective order for good cause shown.

3.    All Confidential Materials shall only be used for the prosecution and/or defense of this Action absent further Order of the Court or the written consent of the Designating Party.

4.    Each Designating Party may, in its sole discretion, designate any documents, electronically-stored information or other materials produced in the course of discovery as "Confidential Materials" within the meaning of this Protective Order. Documents, electronically-stored information and/or other materials that are deemed to be Confidential Materials shall be so designated prior to production or disclosure by marking the respective pages of the documents, electronically-stored information and/or other materials with the legend

2

"CONFIDENTIAL," by Bates number or by any other method reasonably calculated to give other Parties notice of the confidentiality designation.

5.   Confidential Materials shall be disclosed only to the following persons:

a.   Counsel of record for any Party in the Action, including their partners, associates, secretaries, paralegals and employees;

b.   Dr. Cerami and ten (10) officers, directors or employees of Novartis Vaccines and Diagnostics, Inc. ("Novartis").  Before any disclosure of Confidential Materials is made to a person pursuant to this subparagraph (b), the person shall be provided with a copy of this Protective Order and shall consent in writing, in the form annexed hereto as Exhibit A, not to use the Confidential Materials for any purpose other than in connection with the prosecution or defense of the Action and not to disclose further the Confidential Materials except in testimony taken in this case.  The signed consent shall be retained by the attorneys of record disclosing such Confidential Materials and, subject to Fed. R. Civ. P. 26(b)(3), a copy shall be furnished to the Designating Party upon further order of the Court;

c.   Witnesses who are being examined at deposition or trial about Confidential Materials.  However, in no event shall any personnel of Abbott Laboratories ("Abbott") be given access to the Settlement Agreement between Chiron Corporation, The Rockefeller University and Centocor, Inc. (including the exhibits thereto) and in no event shall any Centocor, Inc. or Johnson & Johnson personnel be given access to the Agreement between Novartis (formerly Chiron Corporation), The Rockefeller University and Abbott (including the appendix and exhibits thereto).  Before any disclosure of Confidential Materials is made to a person pursuant to this subparagraph (c), the person

3

shall be provided with a copy of this Protective Order and shall consent in writing, in the form annexed hereto as Exhibit A, not to use the Confidential Materials for any purpose other than in connection with the prosecution or defense of the Action and not to disclose further the Confidential Materials except in testimony taken in this case. The signed consent shall be retained by the attorneys of record disclosing such Confidential Materials and, subject to Fed. R. Civ. P. 26(b)(3), a copy shall be furnished to the Designating Party upon further order of the Court;

       d.     The Court and Court personnel, including stenographic reporters engaged in such proceedings as are necessarily incident to preparation for trial and any such trial of this Action;

       e.     Professional vendors engaged to provide litigation support services, including professional jury or trial consultants and persons engaged in court reporting; stenography; videotaping; photocopying; translating; preparing exhibits or demonstrations; organizing, storing, or retrieving data in any form or medium, and their employees and subcontractors. Before any disclosure of Confidential Materials is made to a person pursuant to this subparagraph (e), the person shall be provided with a copy of this Protective Order and shall consent in writing, in the form annexed hereto as Exhibit A, not to use the Confidential Materials for any purpose other than in connection with the prosecution or defense of the Action and not to disclose further the Confidential Materials except in testimony taken in this case. The signed consent shall be retained by the attorneys of record disclosing such Confidential Materials and, subject to Fed. R. Civ. P. 26(b)(3), a copy shall be furnished to the Designating Party upon further order of the Court;

f.    Any person who was the original author or recipient of the Confidential Materials; and

g.    independent experts who are employed to furnish expert or technical services or to give expert testimony with regard to this action and who are not otherwise affiliated in any way with a party.  Before any disclosure of Confidential Materials is made to a person pursuant to this subparagraph (g), the person shall be provided with a copy of this Protective Order and shall consent in writing, in the form annexed hereto as Exhibit A, not to use the Confidential Materials for any purpose other than in connection with the prosecution or defense of the Action and not to disclose further the Confidential Materials except in testimony taken in this case.  The signed consent shall be retained by the attorneys of record disclosing such Confidential Materials and, subject to Fed. R. Civ. P. 26(b)(3), counsel who retained the person shall forward a copy of the executed declaration, along with a copy of the person's current curriculum vitae, including a list of cases in which the person has testified and the companies and persons for whom the person has consulted or by whom the person has been employed within the past four years, to counsel for the Designating Party at least ten business (10) days prior to the proposed disclosure of Confidential Materials to such person.  If the Designating Party objects to the proposed disclosure within ten business (10) days after receipt of the notice of it, the disclosure may not be made without prior approval by the Court or agreement of the Designating Party.  The burden shall be on the objecting party to show the Court why the disclosure should not be made.

6.    The list of persons to whom Confidential Materials may be disclosed may be expanded or modified by mutual agreement in writing by counsel for the Designating Party and

5

the party receiving the Confidential Materials ("Receiving Party") without necessity of modifying this Order.

       7.   Deposition testimony concerning any Confidential Materials that reveals the contents of such materials shall, at a Party's request to the reporter either on the record at the time of the deposition or within fourteen (14) days after the receipt of a final deposition transcript, be deemed confidential, and the portions of the transcript containing such testimony, together with any exhibits referred to therein, shall be separately bound, with a cover page prominently marked "CONFIDENTIAL" or "PORTIONS CONFIDENTIAL". Such portion of the transcript shall be deemed to be Confidential Materials within the meaning of this Protective Order.

       8.   Nothing in this Protective Order is intended to constitute any agreement regarding the scope of discovery or the use or admissibility of any documents or information in connection with any motion, trial, hearing or other proceeding in this action. This Protective Order shall be without prejudice to the right of any Party or non-party to oppose production of information on any applicable ground, including any applicable privilege, and nothing in this Protective Order shall be construed as a waiver of any Party's right to object or assert any such privilege in response to any request for information. The existence of this Protective Order shall not be used by any Party as a basis for discovery that is not otherwise proper under the Federal Rules of Civil Procedure.

       9.   Notwithstanding the provisions of this Protective Order, where the Confidential Materials are not material to issues addressed in court submissions and the Parties agree in writing that the redaction of confidential information from documents would be

6

sufficient to protect the interests of the Designating Party, the Parties may file documents in redacted form.

10.    Except as provided for in Paragraph 9, the Receiving Party must provide advance notice of at least five (5) business days to the Designating Party (or to the Designating Party and Abbott or The Rockefeller University if the documents were "Confidential Information" under the Stipulated Protective Order entered in Patent Litigation), if the Receiving Party intends to file Confidential Materials with the Court or to use Confidential Materials at the trial in this Action.

11.    Following such notice, the Parties or, if applicable, the Parties, Abbott and/or the Rockefeller University, shall endeavor in good faith to resolve any disputes pursuant to Rule 4.B of the Individual Rules of the Honorable Alvin K. Hellerstein, effective October 4, 2007.  If the disputes are not resolved, the Designating Party, within the aforesaid five (5) business day period, may apply for such order as it deems necessary to protect the confidentiality of such materials, unless direction is sought from the Court as described in Rule 2.E of the Individual Rules of the Honorable Alvin K. Hellerstein, effective October 4, 2007 ("Rule 2.E"). In no event shall filing of Confidential Materials be made before the Court responds to a request for direction made under Rule 2.E; however, the Receiving Party can identify the Confidential Materials in its papers filed with the Court without any direction from the Court and prior to any Court response to a request for direction.

12.    The sealing of any document to be submitted to the Court will be regulated by a separate order to be requested in accordance with Rule 4.A. of the Individual Rules of The Honorable Alvin K. Hellerstein, effective October 4, 2007, and the Receiving Party will not oppose a request for a sealing order.

7

13.     Nothing in this Protective Order shall be construed to limit in any way (a) any Designating Party's use of its own Confidential Materials in any manner whatsoever; or (b) any Party's use of documents or other information developed or obtained independently of discovery in this Action for any purpose, whether or not such documents or other information were produced in the Action as Confidential Materials.

14.     Production of documents shall not constitute a waiver of confidentiality if, as soon as reasonably possible after the Designating Party realizes that there has been an inadvertent or unintentional disclosure without appropriate confidentiality designations, the Designating Party provides notice and appropriately marked replacement copies.  At the request of the Designating Party, the Receiving Party immediately shall return all copies of such incorrectly designated document(s).  Nothing herein shall prevent the Receiving Party from challenging the confidentiality designation as set forth in Paragraph 15.

15.     Should the Receiving Party object to the designation of documents, electronically-stored information and/or other materials as Confidential Materials and the objection cannot be resolved informally, after a meet and confer in which the Parties attempt to resolve the issue, the Parties may submit a joint letter to the Court seeking resolution as to whether the materials should be treated as "Confidential Materials" hereunder.  The Designating Party shall bear the burden of showing that the designation was warranted.  Pending a decision on any such submission, the materials subject to the submission shall continue to be treated as "Confidential Materials" for purposes of this Protective Order.

16.     No Party shall be obligated to challenge the propriety of a designation of documents, electronically-stored information and/or other materials as Confidential Materials

within a specific period of time, and a failure to do so shall not preclude a subsequent challenge to the propriety of such designation.

17.    It is expected that substantial quantities of documents will be produced in this Action, which may result in an inadvertent disclosure of information, documents, or items subject to claims of protection under the attorney-client privilege, work product doctrine, or other doctrines or privileges of nondisclosure ("assertedly privileged material"). Within 45 days after the Producing Party actually learns of an inadvertent disclosure, the Producing Party may notify in writing the Receiving Party that said production was inadvertent and demand the return of the assertedly privileged material. On such timely demand, the Receiving Party shall retrieve and return all copies of such information, documents and/or things to the Producing Party within five (5) business days of receipt of such notice and shall not further disclose or use the information contained in such items for any purpose until order of the Court. If the Producing Party demands the return of the assertedly privileged material within this 45-day grace period, the disclosure of assertedly privileged material shall be deemed inadvertent. After the 45-day grace period, any demand for return of inadvertently produced assertedly privileged material shall be governed by the procedures and standards of the applicable case law.

18.    Nothing in this Protective Order will preclude any Party from seeking amendments hereto broadening or restricting the rights of access to and use of Confidential Materials and the Parties may modify the terms of this Protective Order by stipulation with the approval of the Court.

19.    Nothing in this Order shall prevent or otherwise restrict counsel for a party from rendering legal advice to such party with respect to the Action and, in the course thereof, relying upon an examination of Confidential Information; provided, however, that in rendering

9

such advice and in otherwise communicating with the party, counsel shall not disclose Confidential Information.

20.    Non-party information designated as Confidential Materials by a non-party shall be governed by the terms of this Protective Order, and the non-party producing such information shall have standing to enforce this Protective Order with respect to Confidential Materials it produces to the same extent as a Party. A copy of this Protective Order shall be attached to any subpoena, deposition notice, or other request for information served in this Action upon non-parties after the date of this Protective Order. Any Party that has served a subpoena upon any non-party prior to the date of this Protective Order shall, within fifteen (15) days of the date hereof, provide such non-party with a copy of this Protective Order.

21.    If a Receiving Party receives a subpoena seeking production or other disclosure of "Confidential Materials," it shall give written notice to counsel for the Designating Party, stating the confidential material sought and enclosing a copy of the subpoena. Where possible, at least five (5) days notice before production or other disclosure should be given. In no event shall production or disclosure be made before notice is given.

22.    Upon final termination of this action (including all appeals) the Receiving Party shall, within thirty (30) days of such termination, either return to the Designating Party or destroy all Confidential Material in its possession. In either event, the Receiving Party shall describe the material returned or destroyed and certify their return or destruction, with the exception that outside counsel and in-house counsel, as well as the non-lawyer employees within the legal department who assist them, may retain (i) copies of the pleadings or other papers filed with the Court or served in the course of the litigation, deposition transcripts, deposition exhibits and the trial record; and (ii) one file copy of all documents produced in the course of discovery.

Nothing herein shall restrict the ability of the parties or their counsel to retain information or documents not designated as Confidential Material by the Designating Party.

23.    This Protective Order may be executed in any number of counterparts, each of which when executed shall be deemed to be an original, but all of which, when together, shall constitute one and the same document.

Dated: December 5, 2007

MORRISON & FOERSTER LLP
*Attorneys for Novartis Vaccines and Diagnostics, Inc.*

_Rachel Krevans (pro hac vice)_
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

Grant J. Esposito
William J. Kuhne
Craig B. Whitney
1290 Avenue of the Americas
New York, NY 10104-0050
(212) 468-8000

Dated: _____, 2007

TROUTMAN SANDERS LLP
*Attorneys for Dr. Anthony Cerami*

Barry J. Brett
Sharon H. Stern
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 704-6000

SO ORDERED:

_____
Honorable Alvin K. Hellerstein
United States District Judge

11

## EXHIBIT A

The undersigned hereby acknowledges that (s)he has read the Stipulated Protective Order entered in the United States District Court for the Southern District of New York dated _____, 2007 in the action entitled Dr. Anthony Cerami v. Novartis AG and Novartis Vaccines And Diagnostics, Inc., 1:07-CV-05634-AKF-DFE (S.D.N.Y), and understands the terms thereof and agrees to be bound thereby. The undersigned agrees not to use the Confidential Materials defined therein for any purpose other than in connection with the prosecution or defense of this case, and will not further disclose the Confidential Materials except in testimony taken in this case. In addition, the undersigned hereby submits to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of enforcing the attached Protective Order .


_____
Date

_____
Signature

_____
Print Name

_____
Name of Organization

_____
Title

12

**EXHIBIT B**



The Rockefeller University

SCIENCE FOR THE BENEFIT OF HUMANITY

Deborah Y. Yeoh
*Deputy General Counsel*
*Office of General Counsel*
Tel: (212) 327-8071
Fax: (212) 327-7688
E-mail: yeohd@rockefeller.edu

November 16, 2007

<u>BY FEDERAL EXPRESS</u>

Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1050
New York, New York 10007

RE:   <u>Cerami v. Novartis AG et al, 1:07-CV-05634-AKH-DFE</u>

Dear Judge Hellerstein:

I am writing on behalf of The Rockefeller University ("Rockefeller") in this action. I have been advised by counsel for defendant Novartis Vaccines & Diagnostics ("Novartis") that this Court orally directed Novartis to produce to plaintiff Anthony Cerami (i) the confidential License Agreement between Chiron Corporation (later, Novartis) and Centocor Inc. ("Centocor") that memorialized a settlement with Centocor (the "Centocor Agreement") of <u>The Rockefeller University and Chiron Corporation v. Centocor Inc. and Abbott Laboratories</u>, Civ. Action No. 2-04CV-168-TJW (E.D. Tx.) (the "TNF litigation") and (ii) the confidential Agreement among Rockefeller, Novartis and Abbott Laboratories ("Abbott") that memorialized the settlement with Abbott (the "Abbott Agreement") of the TNF litigation. As described below, Rockefeller does not object to the production of these confidential Agreements to Dr. Cerami, who already has a copy of the entire Abbott Agreement and a substantial portion of the Centocor Agreement and is bound by their confidentiality restrictions. However, Rockefeller respectfully requests, to the extent these Agreements are used in this litigation, that Your Honor impose an Order that maintains their confidentiality in a manner described below.

By way of background, in 1985, Rockefeller and Novartis entered into a license agreement, under which Novartis obtained exclusive rights to certain intellectual property and Rockefeller patents (the "1985 License Agreement"). Plaintiff Cerami was one of the inventors of that intellectual property.

THE ROCKEFELLER UNIVERSITY
1230 York Avenue
New York, NY 10065-6399
www.rockefeller.edu

MEMO ENDORSED

In 2004, Rockefeller and its licensee Novartis instituted an action against Centocor and Abbott, alleging that their products infringed the Rockefeller patents. In December 2005, Rockefeller and Novartis reached a confidential settlement with Centocor, memorialized in the Centocor Agreement. Nine months later, in September 2006, Rockefeller and Novartis reached a separate confidential settlement with Abbott, memorialized in the Abbott Agreement.

Essential elements of both of these confidential settlements are ongoing sublicenses of the Rockefeller patents that were granted to Centocor and Abbott.[1] The terms of each sublicense have been kept confidential by the parties for business reasons. Indeed Centocor does not know the terms of the Abbott Agreement, and Abbott does not know the terms of the Centocor Agreement. Confidentiality was so important as a business matter to the companies that the court having jurisdiction of the TNF litigation denied Abbott's motion to allow its in-house counsel to have access to the Centocor Agreement. (A copy of the Order, filed January 19, 2006, is attached as Exhibit A.) Both sublicenses are ongoing and will continue into the future.

To the extent that the Centocor Agreement and the Abbott Agreement allow for limited disclosure, such disclosure is permitted only if the persons to whom it is made commit to the same level of confidentiality as set forth in the Agreements. Because the Rockefeller inventors, including plaintiff Cerami, are entitled to a share of cash proceeds received by the University pursuant to Rockefeller's Intellectual Property Policy, both settlements give the inventors access to the Agreements' terms in order to allow the inventors to verify their shares. Thus, after agreeing to maintain confidentiality, on January 26, 2006, Dr. Cerami, through his counsel (which is the same law firm representing him in this action), received a copy of substantial portions of the Centocor Agreement, including the sublicense. (A copy of Dr. Cerami's confidentiality agreement is attached as Exhibit B.) After Dr. Cerami and his counsel agreed to be bound by confidentiality, on October 19, 2006, Dr. Cerami, through his counsel, received a copy of the Abbott Agreement, including the Covenant Not to Sue. (A copy of Dr. Cerami's confidentiality agreement is attached as Exhibit C.).[2]

Licenses and sublicenses such as those involved in the litigation and settlement of the TNF litigation are routinely and typically not publicly available as they contain sensitive business information and/or trade secrets. Rockefeller is anxious to ensure that disclosure of the Abbott Agreement and the Centocor Agreement in this litigation does not result in their loss of confidentiality, including through even limited public disclosure. The parties to those Agreements have ongoing obligations and commitments as a result of the license and sublicenses that were the subject and consequence of those settlements. Nevertheless, in recognition that these documents may be necessary to the instant litigation and because both parties here have had full or substantial access to them, Rockefeller does not object to production of the Agreements to Dr. Cerami under terms that strictly protect their confidentiality.

Rockefeller respectfully requests that this Court issue an order that protects the confidentiality of these Agreements so that they are not publicly available and access is permitted only for limited

---

[1]    In the Abbott Agreement, the sublicense is denominated a Covenant Not To Sue.
[2]    Rockefeller was dismayed to discover that although Dr. Cerami and the law firm representing him here agreed to keep confidential the 1983 License Agreement between Rockefeller and Novartis, this same agreement was publicly filed as Exhibit A to Dr. Cerami's complaint in this action. (A copy of Dr. Cerami's confidentiality agreement is attached as Exhibit D.)

purposes as required by this litigation. Rockefeller requests that the Agreements be marked "Confidential" and that access to these Agreements be restricted to the parties, their counsel and appropriate personnel associated with the litigation, who agree to commit to court-imposed confidentiality terms. Appropriate personnel include the law firms representing the parties and their personnel, including attorneys, paralegal, clerical and stenographic employees; experts and consultants retained by either party for this litigation; and other persons that the Court requires should have access. Consistent with the Order, filed January 19, 2006 (Exh. A), Rockefeller further requests that Centocor's and Abbott's personnel, including those who might be called as deponents or witnesses in this litigation, not have access to the other pharmaceutical company's Agreement with Rockefeller and Novartis.

I am available to address any questions that the Court may have for Rockefeller.

Thank you for your consideration of this request.

Respectfully submitted,

Deborah Y. Yeoh
Deputy General Counsel

(enclosures)

cc:    William Kuhne, Morrison & Foerster LLP (with enclosures) (by federal express)
       Barry J. Brett, Troutman Sanders LLP (with enclosures) (by federal express)

**EXHIBIT C**

# TROUTMAN SANDERS LLP

### ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

THE CHRYSLER BUILDING
405 LEXINGTON AVENUE
NEW YORK, NEW YORK 10174
www.troutmansanders.com
TELEPHONE: 212-704-6000
FACSIMILE: 212-704-6288

Barry J. Brett
barry.brett@troutmansanders.com

Direct Dial: 212-704-8218
Direct Fax: 212-704-5895

November 16, 2007

## VIA E-MAIL AND OVERNIGHT MAIL
Kevin E. Warner, Esq.
Winston & Strawn LLP
36 West Wacker Drive
Chicago, Illinois 60601-9703

William J. Kuhne, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050

RE:    Cerami v. Novartis AG et al., 1:07-CV-05634 (S.D.N.Y.)

Gentlemen:

In response to the letter of November 15 from Kevin Warner and the email from Bill Kuhne, it is the view of counsel for Dr. Cerami that nothing in this correspondence provides any basis for Novartis to take any action other than make timely production of all documents described in its initial disclosure which Judge Hellerstein directed be produced on Monday, when these issues were discussed at a hearing last month. Any motion filed by Abbott will not relieve Novartis of that obligation, particularly a motion made on the eve of production or indeed the date of production regarding an Order of which you all have long been aware.

Assuming that full production is made by Novartis on Monday, we remain prepared to continue a dialogue with Abbott to address any legitimate concerns which it may have and to avoid unnecessary burdens on the Court or counsel. Any such exchange must accept several basic principles:

1.    The documents involved were all designated by Novartis in its initial disclosure, and Abbott's view of relevance is not correct and has nothing to do with the obligations of Novartis to make production or what discovery is to take place in this lawsuit;

2.    We cannot agree to any requirement to file any documents under seal in view of the rules of Judge Hellerstein and the Court's oft stated views which limit such filings. After review of the documents, we will discuss reasonable conditions and procedures which will provide an opportunity to seek such designation;

ATLANTA · HONG KONG · LONDON · NEW YORK · NEWARK · NORFOLK · RALEIGH
RICHMOND · SHANGHAI · TYSONS CORNER · VIRGINIA BEACH · WASHINGTON, D.C.

TROUTMAN SANDERS LLP
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

Kevin E. Warner, Esq.
William J. Kuhne, Esq.
November 16, 2007
Page 2

3.      We will not agree to any limits on the materials to be produced at this time or to delay production, but will agree that if it will avoid unnecessary proceedings, we will treat any of the documents produced by Novartis on Monday which Abbott designates as highly confidential as subject to an attorneys eyes only restriction for two weeks. During that time we will review the documents and confer with you as to what restrictions are appropriate and whether any can be returned and deemed deleted from production;

4.      If at any time during that two week period Abbott deems the discussions as unproductive and deems it necessary to seek relief beyond the two week period, we will continue the attorneys eyes only limitation until the Court resolves any issues raised by an Abbott motion made during that period; and

5.      Those restrictions will not apply to any documents which are already available or become available from any source other than the production to be made by Novartis on Monday.

I am available to continue these discussions at any time today and we anticipate full compliance by Novartis as required.

Very truly yours,

Barry J. Brett

**EXHIBIT D**

# TROUTMAN SANDERS LLP

### ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

THE CHRYSLER BUILDING
405 LEXINGTON AVENUE
NEW YORK, NEW YORK 10174
www.troutmansanders.com
TELEPHONE: 212-704-6000
FACSIMILE: 212-704-6288

Barry J. Brett
barry.brett@troutmansanders.com

Direct Dial: 212-704-6216
Direct Fax: 212-704-5995

November 28, 2007

**VIA REGULAR MAIL AND E-MAIL**

Kevin E. Warner, Esq.
Winston & Strawn LLP
36 West Wacker Drive
Chicago, Illinois 60601-9703

RE:    <u>Cerami v. Novartis AG et al., 1:07-CV-05634(S.D.N.Y.)</u>

Dear Mr. Warner:

As part of the meet and confer process in connection with Abbott's motion for intervention and a protective order, we propose the following stipulation to resolve the Abbott motion.

1. Abbott will withdraw all objections to the production of documents by Novartis, and raise no further objections to production of documents to plaintiff by Novartis or others, except that Abbott may raise proper objections in connection with any requests made directly to Abbott;

2. Any documents produced by Novartis which Abbott asks be marked "confidential", will be deemed "confidential" under the protective order applicable to the parties in this case, including the requirement that they be used solely for purposes of this lawsuit;

3. If we intend to file any Abbott confidential documents with the Court, we will give Abbott reasonable notice of our intention and engage in good faith discussions as to redactions or other arrangements which will avoid the need for filing under seal; (See Judge Hellerstein Rule 4.B) and

4. In the event Abbott determines that agreed upon redactions or other arrangements under paragraph 3 are not adequate to protect Abbott confidential information, it

ATLANTA · HONG KONG · LONDON · NEW YORK · NEWARK · NORFOLK · RALEIGH
RICHMOND · SHANGHAI · TYSONS CORNER · VIRGINIA BEACH · WASHINGTON, D.C.

TROUTMAN SANDERS LLP
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

Kevin E. Warner, Esq.
November 28, 2007
Page 2

will retain the right to file a timely application with the Court seeking leave to file under seal. (See Judge Hellerstein Rule 2.E)

We are enclosing copies of Judge Hellerstein's rules which indicate that the above procedures are here appropriate and that plaintiff cannot stipulate to filing under seal without permission of the Court. I foresee no circumstance in which we would oppose filing under seal.

We also enclose a copy of a November 16, 2007 letter sent to Judge Hellerstein on behalf of Rockefeller University, in which it acknowledged that Novartis was required to produce documents as to which Rockefeller sought confidential treatment. This enclosure reflects an endorsed order by the Court recognizing Dr. Cerami's right to the documents at issue, and directing that the parties enter into a stipulation in accordance with Judge Hellerstein's rules that would resolve the issues of restricting public access to the subject documents.

The foregoing and well settled law also confirm that Abbott's efforts to interfere with discovery by urging its view of relevance is untenable and that a non-party, like Abbott, does not have standing to assert relevancy objections. See e.g. Goland v. Iglesias, 1988 U.S. Dist. LEXIS 3528, *56 (S.D.N.Y. 1988); Financial General Bankshares v. Lance, 1979 U.S. Dist. LEXIS 12590, *7 n. 4 (S.D.N.Y. 1979).

In view of the foregoing, we continue to believe that the Abbot motion is not appropriate and we will pursue our application for sanctions if Abbott makes it necessary to oppose its motion.

We request that you provide us with a response to this proposal by noon on Friday, November 30, 2007 so that we can determine what further efforts are necessary in dealing with the Abbott Motion. If you have any other similar proposals on this subject that would not impair our receipt and use of the subject documents, we would be prepared to address those as well but we deem it critical to know promptly whether we must oppose the Abbott motion.

Very truly yours,

Barry J. Brett

cc:    William J. Kuhne, Esq.

Enclosures

INDIVIDUAL RULES OF THE
HONORABLE ALVIN K. HELLERSTEIN
SOUTHERN DISTRICT OF NEW YORK

Effective October 4, 2007

Chambers
Room 1050
United States Courthouse
500 Pearl Street
New York, New York 10007
Tel: (212) 805-0152
Fax: (212) 805-7942

Courtroom
Room 14D
United States Courthouse
500 Pearl Street
New York, New York 10007
(212) 805-0127

Unless otherwise ordered by Judge Hellerstein, matters before Judge Hellerstein shall be conducted in accordance with the following practices:

1.    Communications With Chambers.

    A.    Letters. Copies of letters to Chambers shall simultaneously be delivered to all counsel in no less speedy a manner than the method of delivery to the Court. Counsel shall not copy the Court on correspondence between and among them. Refer to Rule 2.E below for letters concerning disputes.

    B.    Method of Delivery.

        (a)    Copies of documents may either be mailed to Chambers or left with the Court Security Officer at the Worth Street entrance of the Courthouse. Papers shall not be delivered directly to Chambers except following special permission to do so.

        (b)    Faxes may be sent only for urgent matters requiring an immediate response from Chambers, or following special permission (see special rule regarding adjournments and extensions below). Do not follow with a hard copy.

    C.    Telephone Calls. Telephone calls to chambers are permitted. However, do not call Chambers with procedural questions that are covered by the Local Rules of this Court and the Federal Rules of Civil Procedure. For docketing, scheduling and calendar matters, except for matters relating to September 11-related Litigation, call Brigitte Jones, Courtroom Deputy, at (212) 805-0127. For questions or information relating to the September 11 Litigation, please check our website: www.nysd.uscourts.gov (Click on "cases"). For requests for adjournments or extensions, see the following paragraph.

    D.    Requests for Adjournments or Extensions of Time. All requests for adjournments or extensions of time must be made in writing and must state: (1) the original date; (2) the number of previous requests for adjournment or extension; (3) whether these previous requests were granted or denied; (4) whether the adversary consents, and, if not, the reasons by the applicant, and by the adversary, for and against the relief requested, and (5) all

other dates previously scheduled after the original date, including dates for conferences with the Court, and a suggested modified schedule, agreed to by all other counsel. If the request is for an adjournment of a court appearance, absent an emergency, it should be made at least 48 hours prior to the scheduled appearance. **DO NOT** call Chambers or Courtroom to announce your intention to request an adjournment. Requests for adjournments or extensions of time (under 3 pages) may be made by fax without permission to fax. **DO NOT** call Chambers to ask for permission to fax a letter requesting an adjournment or extension.

      **E.**    **ECF Cases.** All civil and criminal cases (except Pro Se and special cases) filed on or after March 1, 2004 assigned to Judge Hellerstein are Electronic Case Filings ("ECF"). All counsel must register for ECF in each case pending before this Court. Counsel are responsible for checking their registered email and court docket sheet for memo-endorsements and orders. If you are not receiving such emails, please contact the ECF Help Desk at (212) 805-0800.

**2.**    **Pleadings & Motions.**

      **A.**    **Pre-Motion Conferences in Civil Cases.** Pre-motion conferences, or permission to file motions, are not required.

      **B.**    **Filing of Motion Papers.** Motion papers shall be filed promptly after service. All motions, and courtesy copies of motions, shall include a table of contents listing all affidavits and exhibits. Affidavits and exhibits shall be clearly identified by tabs on both original and courtesy copies. Exhibits shall be marked sequentially such that no exhibit number or letter repeats, regardless of the affidavit to which it is attached. Exhibits for plaintiffs should be marked by numbers; exhibits for defendants should be marked by letters.

      **C.**    **Courtesy Copies.** Courtesy copies of all pleadings, motions and supporting papers shall be submitted to Chambers. Courtesy copies are required in cases following electronic filing procedures.

      **D.**    **Return Dates; Oral Argument on Motions.** Motions shall be returnable on any day of the week. Counsel should not appear in Court on the return date. The Court prefers oral argument on motions and will schedule the date and time for argument.

      **E.**    **Disputes.** Unless directed otherwise, counsel should describe their disputes in a single letter, jointly composed. Separate and successive letters will be returned, unread. Strict adherence to Fed. R. Civ. P. 37(a)(2)(A), the meet and confer rule, is required, and should be described in the joint submission as to time, place and duration, naming the counsel involved in the discussion.

**3.**    **Pretrial Procedures**

      **A.**    **Joint Pretrial Orders in Civil Cases.** Following the close of discovery, unless otherwise ordered by the Court, a final pretrial conference will be scheduled as close as possible to the date that the trial is scheduled to begin. The parties shall submit, three days

prior to that conference, for the Court's approval, a joint pretrial order, which shall include the following:

      i.      The full caption of the action.

      ii.      The names, addresses (including firm names), e-mail addresses, telephone and fax numbers of trial counsel.

      iii.      A brief statement by plaintiff as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction. Such statements shall include citations to all statutes and cases relied on and relevant facts as to citizenship and jurisdictional amount.

      iv.     (a)     A brief summary of the claims and defenses to be tried, without recital of evidentiary matter but including citations to all statutes and cases relied on; and

            (b)     A copy of the pleadings marked to show, for each claim and defense, in the margin next to each allegation thereof, the admissions and denials; and if any claims or defenses have been withdrawn or previously determined.

      v.      A statement as to whether the case is to be tried with or without a jury, and the estimated number of trial days (including direct and cross-examination for all witnesses).

      vi.      A statement as to whether or not all parties have consented to trial of the case by a magistrate judge (without identifying which parties have or have not so consented).

      vii.      Any stipulations or agreed statements of fact or law.

      viii.      A list of each party's witnesses actually intended to be called, and, if the witness cannot be present and will testify through deposition, the precise portions of deposition transcripts actually intended to be introduced together with any cross-designations and objections by any other party. (If voluminous, this portion of the submission may be made after the pretrial conference, on a date set at the conference).

      ix.      A list of exhibits actually intended to be offered at trial, indicating exhibits to which no party objects on grounds of authenticity and exhibits to which no party objects on any ground. (If voluminous, this portion of the submission may be made after the pretrial conference, on a date set at the conference). Exhibits for plaintiffs should be marked by numbers; exhibits for defendants should be marked by letters; and plaintiffs and defendants shall bring to the conference loose-leaf exhibit binders of all exhibits they actually intend to offer at the trial.

    **B.**    **Filings Prior to Trial in Civil Cases.** On or before a date set by the Court, prior to trial, each party shall submit, in duplicate:

      i.      A pretrial memorandum, describing the party's position on the factual and legal issues to be tried;

ii.     In jury cases, proposed requests to charge and proposed voir dire questions;

iii.     In non-jury cases, proposed findings of fact and conclusions of law for each claim and defense; and

iv.     The submissions described in ii and iii above shall be in both hard copy and electronically in MS Word format (by email or CD-Rom).

4.     **Confidentiality Provisions.**

A.     **Protective Orders.** Court records and docket sheets are to be accessible to the public, and enjoy a presumption of openness to public inspection. The presumption "is rebuttable upon demonstration that suppression is essential to preserve higher values and is narrowly tailored to serve that interest." The Hartford Courant Co. v. Pellegrino, 371 F.3d 49, 63 (2d Cir. 2004) (internal quotation marks and citations omitted). Accordingly, no protective order shall be submitted that provides for sealing of documents or other information in connection with a submission to the court, except following a motion supported by competent evidence showing that sealing is essential to preserve higher values and is narrowly tailored to serve that interest.

B.     **Disputes.** The parties are directed to cooperate in seeking to resolve disputed issues of confidentiality prior to filing material designated as "confidential," or "confidential attorneys' eyes only," for example, by redaction of documents to be filed on the public record or by stipulation of facts. In the event that such issues are not resolved promptly, the parties should seek direction from the Court by a single, joint letter as described above in Rule 2.E.

C.     **Settlements.** In the case of settlements, requests that the court retain jurisdiction will be considered only if all documents relating to the settlement are filed and publicly accessible, except for cause shown satisfying Rule 4A.



The
Rockefeller
University
1901

SCIENCE FOR THE BENEFIT OF HUMANITY

Deborah Y. Yeoh
*Deputy General Counsel*
*Office of General Counsel*
Tel: (212) 327-8071
Fax: (212) 327-7698
E-mail: yeohd@rockefeller.edu

November 16, 2007

BY FEDERAL EXPRESS

Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1050
New York, New York 10007

RE:    Cerami v. Novartis AG et al, 1:07-CV-05634-AKH-DFE

Dear Judge Hellerstein:

I am writing on behalf of The Rockefeller University ("Rockefeller") in this action. I have been advised by counsel for defendant Novartis Vaccines & Diagnostics ("Novartis") that this Court orally directed Novartis to produce to plaintiff Anthony Cerami (i) the confidential License Agreement between Chiron Corporation (later, Novartis) and Centocor Inc. ("Centocor") that memorialized a settlement with Centocor (the "Centocor Agreement") of The Rockefeller University and Chiron Corporation v. Centocor Inc. and Abbott Laboratories, Civ. Action No. 2-04CV-168-TJW (E.D. Tx.) (the "TNF litigation") and (ii) the confidential Agreement among Rockefeller, Novartis and Abbott Laboratories ("Abbott") that memorialized the settlement with Abbott (the "Abbott Agreement") of the TNF litigation. As described below, Rockefeller does not object to the production of these confidential Agreements to Dr. Cerami, who already has a copy of the entire Abbott Agreement and a substantial portion of the Centocor Agreement and is bound by their confidentiality restrictions. However, Rockefeller respectfully requests, to the extent these Agreements are used in this litigation, that Your Honor impose an Order that maintains their confidentiality in a manner described below.

By way of background, in 1985, Rockefeller and Novartis entered into a license agreement, under which Novartis obtained exclusive rights to certain intellectual property and Rockefeller patents (the "1985 License Agreement"). Plaintiff Cerami was one of the inventors of that intellectual property.

THE ROCKEFELLER UNIVERSITY
1230 York Avenue
New York, NY 10065-6399
www.rockefeller.edu

MEMO ENDORSED

In 2004, Rockefeller and its licensee Novartis instituted an action against Centocor and Abbott, alleging that their products infringed the Rockefeller patents. In December 2005, Rockefeller and Novartis reached a confidential settlement with Centocor, memorialized in the Centocor Agreement. Nine months later, in September 2006, Rockefeller and Novartis reached a separate confidential settlement with Abbott, memorialized in the Abbott Agreement.

Essential elements of both of these confidential settlements are ongoing sublicenses of the Rockefeller patents that were granted to Centocor and Abbott.[1] The terms of each sublicense have been kept confidential by the parties for business reasons. Indeed Centocor does not know the terms of the Abbott Agreement, and Abbott does not know the terms of the Centocor Agreement. Confidentiality was so important as a business matter to the companies that the court having jurisdiction of the TNF litigation denied Abbott's motion to allow its in-house counsel to have access to the Centocor Agreement. (A copy of the Order, filed January 19, 2006, is attached as Exhibit A.) Both sublicenses are ongoing and will continue into the future.

To the extent that the Centocor Agreement and the Abbott Agreement allow for limited disclosure, such disclosure is permitted only if the persons to whom it is made commit to the same level of confidentiality as set forth in the Agreements. Because the Rockefeller inventors, including plaintiff Cerami, are entitled to a share of cash proceeds received by the University pursuant to Rockefeller's Intellectual Property Policy, both settlements give the inventors access to the Agreements' terms in order to allow the inventors to verify their shares. Thus, after agreeing to maintain confidentiality, on January 26, 2006, Dr. Cerami, through his counsel (which is the same law firm representing him in this action), received a copy of substantial portions of the Centocor Agreement, including the sublicense. (A copy of Dr. Cerami's confidentiality agreement is attached as Exhibit B.) After Dr. Cerami and his counsel agreed to be bound by confidentiality, on October 19, 2006, Dr. Cerami, through his counsel, received a copy of the Abbott Agreement, including the Covenant Not to Sue. (A copy of Dr. Cerami's confidentiality agreement is attached as Exhibit C.)[2]

Licenses and sublicenses such as those involved in the litigation and settlement of the TNF litigation are routinely and typically not publicly available as they contain sensitive business information and/or trade secrets. Rockefeller is anxious to ensure that disclosure of the Abbott Agreement and the Centocor Agreement in this litigation does not result in their loss of confidentiality, including through even limited public disclosure. The parties to those Agreements have ongoing obligations and commitments as a result of the license and sublicenses that were the subject and consequence of those settlements. Nevertheless, in recognition that these documents may be necessary to the instant litigation and because both parties here have had full or substantial access to them, Rockefeller does not object to production of the Agreements to Dr. Cerami under terms that strictly protect their confidentiality.

Rockefeller respectfully requests that this Court issue an order that protects the confidentiality of these Agreements so that they are not publicly available and access is permitted only for limited

---

[1]    In the Abbott Agreement, the sublicense is denominated a Covenant Not To Sue.

[2]    Rockefeller was dismayed to discover that although Dr. Cerami and the law firm representing him here agreed to keep confidential the 1985 License Agreement between Rockefeller and Novartis, this same agreement was publicly filed as Exhibit A to Dr. Cerami's complaint in this action. (A copy of Dr. Cerami's confidentiality agreement is attached as Exhibit D.)

purposes as required by this litigation. Rockefeller requests that the Agreements be marked "Confidential" and that access to these Agreements be restricted to the parties, their counsel and appropriate personnel associated with the litigation, who agree to commit to court-imposed confidentiality terms. Appropriate personnel include the law firms representing the parties and their personnel, including attorneys, paralegal, clerical and stenographic employees; experts and consultants retained by either party for this litigation; and other persons that the Court requires should have access. Consistent with the Order, filed January 19, 2006 (Exh. A), Rockefeller further requests that Centocor's and Abbott's personnel, including those who might be called as deponents or witnesses in this litigation, not have access to the other pharmaceutical company's Agreement with Rockefeller and Novartis.

I am available to address any questions that the Court may have for Rockefeller.

Thank you for your consideration of this request.

Respectfully submitted,

Deborah Y. Yeoh
Deputy General Counsel

(enclosures)

cc:   William Kuhne, Morrison & Foerster LLP (with enclosures) (by federal express)
      Barry J. Brett, Troutman Sanders LLP (with enclosures) (by federal express)