UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
DR. ANTHONY CERAMI,

                Plaintiff,

       - against -

NOVARTIS AG and NOVARTIS VACCINES
AND DIAGNOSTICS, INC.,

                Defendant.

------------------------------------- x
ABBOTT LABORATORIES

                Intervenor.

: 1:07-CV-05634-AKH-DFE

: **AFFIDAVIT OF SCOTT LUCE**

## AFFIDAVIT OF SCOTT LUCE

I, Scott Luce, declare as follows:

1. I am the Divisional Vice President of Immunology of Abbott Laboratories (Abbott). I have been employed by Abbott for over 18 years and I have personal knowledge of the facts set forth herein.

2. Through my extensive experience in the pharmaceutical industry generally, and my work at Abbott specifically, I have gained an understanding of the value of proprietary information within the pharmaceutical industry, as well as industry custom and practice.

**I.    The Litigation Documents**

3. Abbott was sued by Chiron Corp. and The Rockefeller University (collectively "Chiron") in the Eastern District of Texas, Marshall Division, in 2004.

4. The discovery phase of the Texas Litigation involved the exchange of a great number of documents containing Abbott-confidential information, including Abbott's proprietary commercial, financial and technical information regarding HUMIRA. ("the Litigation Documents").

5. The district court in the Texas Litigation issued a protective order, largely limiting the disclosure of the aforementioned documents to the outside trial counsel in that action.

### III.   Harm to Abbott if the Litigation Documents are Disclosed

6. Abbott will suffer economic harm if the contents of the Litigation Documents are disclosed to the public.

7. Abbott's HUMIRA product currently generates in excess of $2 billion per year in sales.

8. Abbott views certain information about the research and development underlying HUMIRA, the composition of HUMIRA and the sales and marketing strategies regarding HUMIRA to be highly confidential, trade secret information.

9. Abbott was required to produce a significant amount of this highly confidential, trade secret information in the Rockefeller University et al. v. Centocor et al. litigation (the "TNF Litigation").

10. Confidentiality of information within the pharmaceutical industry is crucial, and disclosure of sensitive financial, commercial, and technical information to Abbott's competitor's would expose Abbott to a weakened competitive position within the industry.

11. This would be true with respect to the disclosure of confidential information related to HUMIRA beyond those persons already permitted access to the documents under the protective order entered in the TNF Litigation.

12. Further disclosure of that information could assist Abbott's competitors to amend or modify current research and development programs, or to alter current sales and marketing strategies for competing products, in order to more effectively compete with HUMIRA. It would also provide competitors with confidential information that would assist them in crafting future patent strategies.

13. This would result in a weakened competitive position and could result in losses in the millions of dollars for Abbott, based on the result of future patent disputes and market position relative to Abbott's competitors.

14. Even disclosure of the Litigation Documents to Dr. Cerami himself would cause harm to Abbott, as Dr. Cerami is an executive officer of a pharmaceutical company that may compete with Abbott both in the marketplace, and in terms of intellectual property rights.

15. In my experience, given the litigiousness of the pharmaceutical industry, Abbott's competitors, if given the chance, will use the contents of the Litigation Documents as an offensive weapon against Abbott, and will do so successfully.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 17, 2007.

*Scott P Luce*
Scott Luce