# WINSTON & STRAWN LLP

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

99 GRESHAM STREET
LONDON EC2V 7NG

MICHAEL J. FRIEDMAN
(212) 294-2608
mfriedman@winston.com

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

(212) 294-6700

FACSIMILE (212) 294-4700

www.winston.com

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

25 AVENUE MARCEAU
75116 PARIS, FRANCE

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5894

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

September 9, 2008

*[Handwritten annotation: Denied as academic. See transcript of hearing, Sep. 10, 2008. 9-10-08 /s/ Hellerstein]*

**BY HAND DELIVERY**

Hon. Alvin K. Hellerstein
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    <u>Cerami v. Novartis Vaccines and Diagnostics, Inc.</u>,
             No. 07 Civ. 5634 (AKH) (DFE)

Dear Judge Hellerstein:

       We represent intervenor Abbott Laboratories in the above matter. We write to ask this Court to extend its previous rulings – permitting Abbott to redact its highly confidential trade secrets from discovery materials produced by Novartis to Dr. Cerami – to also cover Novartis' planned production to Dr. Cerami of the recently-located transcripts of the arbitration proceedings between Novartis and Abbott (the "Arbitration Transcripts").

       In accordance with Individual Rule 2.E., the other parties' positions with respect to Abbott's request are set forth below.

       We note that a conference in this action is currently scheduled for tomorrow, September 10, 2008, at 10:00 a.m.

<u>The Arbitration Transcripts Contain Highly Confidential Abbott Trade Secrets</u>

       The Arbitration Transcripts contain highly confidential Abbott trade secrets, including detailed financial data regarding its multi-billion-dollar HUMIRA product, as well as details of Abbott's proprietary, internal research and development processes. Abbott has diligently worked to protect the confidentiality of this information at all times, including by, *inter alia*, (1) agreeing to resolve its dispute with Novartis in arbitration rather than in open court, (2) requiring Novartis (and Abbott) to agree to destroy all copies of the Arbitration Transcripts upon the completion of the arbitration proceedings, and (3) closely monitoring the present action and moving to intervene to protect its trade secrets when there has been a risk of their disclosure.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/10/08

WINSTON & STRAWN LLP

Hon. Alvin K. Hellerstein
September 9, 2008
Page 2

### This Court Has Previously Permitted Abbott To Redact Its Trade Secrets

This Court has previously ruled on several occasions that Abbott is entitled to protect its confidential information during discovery in this case, including by redacting such information from deposition and court transcripts previously produced by Novartis. *See, e.g.,* June 19, 2008 Hearing, transcript at 12:9-10 ("[Abbott] should get an opportunity, limited in time, to make whatever redactions [it] want[s] to make"); December 20, 2007 Hearing, transcript at 17:15-16 (in the event of future disputes regarding confidentiality of discovery materials, "[Abbott] should be given an opportunity to respond"). By this letter, Abbott simply requests the same opportunity – to redact its confidential information from the Arbitration Transcripts – that this Court previously granted with respect to other transcripts.

### Abbott's Redactions Will Not Hinder These Proceedings

Abbott's proposed redactions will neither slow the pace of these proceedings nor deprive the litigants of any relevant evidence.

At Abbott's request, Novartis has already provided Abbott with a copy of the newly-discovered Arbitration Transcripts, and Abbott has already begun making its proposed redactions. The Arbitration Transcripts cover nearly ten days of testimony, and Abbott proposes to complete its redactions by no later than Friday, September 12, 2008.

The redactions Abbott is making are limited to Abbott trade secrets not relevant to this case. To the extent Dr. Cerami believes that any Abbott redactions are overbroad and/or cover information relevant to this action, Abbott has agreed to work with Dr. Cerami to provide further explanations for the basis of such redactions, and to unredact any information which is not an actual trade secret. As this Court has previously ruled, Novartis will not be permitted to use at trial any evidence withheld during discovery, including the unredacted versions of transcripts it retains.

### Conclusion

For the foregoing reasons, Abbott respectfully requests that this Court permit Abbott to redact its trade secrets from the Arbitration Transcripts prior to Novartis' production of those transcripts to Dr. Cerami.

### **RESPONSE OF DR. CERAMI:**

The background of this application includes the many months during which Novartis denied an ability to produce the "destroyed" transcript which was found by undisclosed efforts after the August 20, 2008 Order Regulating Discovery (the "Order") which contemplated sanctions against Novartis. Novartis interpreted the Federal Rules to permit it to defer its compliance with the "Order" until September 4. On September 3 counsel for Novartis advised the Court (Ex. A) that it intends to produce the transcript tomorrow unless Abbott intervenes. On September 4 counsel: (i) purported to comply with paragraph 5 of the Order with a brief letter (Ex. B) which does not disclose how the transcript was located or how the earlier reports of

**WINSTON & STRAWN** LLP

Hon. Alvin K. Hellerstein
September 9, 2008
Page 3

unavailability were prepared or overcome and (ii) by e-mail (Ex. C) advised us that they "believe the Order does not so require" [production of the transcript.]

Novartis did not produce the transcript to Dr. Cerami, but at some early date had instead sent it to Abbott's counsel with the obvious expectation [or certainty] that Abbott would object. Indeed Abbott's counsel had objected by September 3, the date of the letter to the Court. We contend that the events described above reflect a continuation of a program to make each effort at discovery as arduous and costly as possible for Dr. Cerami. We note that as of Monday, September 8, 2008, Novartis has not complied with paragraphs 1 to 4 of the Order or submitted a recommended agenda for the conference. Counsel for Dr. Cerami will not have access to economic or other data reflected in the transcript during the September 10 proceedings.

For reasons set forth in greater detail below, Plaintiff urges that immediate production of the transcript be directed, subject to the existing protective Order, as well as to further discussions among counsel as to any proper further limitations on its use.

1. <u>The "Novartis-Abbott" actions and this application are not consistent with the letter or spirit of this Court's "Order Regulating Discovery" dated August 20, 2008 or the admonitions of the Court as to the manner of conducting discovery.</u>

For many months, Novartis advised the Court and opposing counsel that it had no ability to produce the transcript of the TNF arbitration and it vigorously defended its actions. (*See e.g.* Novartis responses to motion for sanctions dated August 14, 2008 pp. 13-17). The Order was entered on August 20, 2008. After months of proceedings, several motions, extended discussions among counsel, additional deposition testimony in California regarding the TNF transcript, the above September communications from Novartis were too little too late to make the disclosure directed by the Order. We will not here address whether there was literal compliance, we merely note that there is nothing before the Court to explain Novartis' prior positions or the belated discovery of the transcript.

Particularly against that background, there was absolutely no justification for Novartis to send the transcript to counsel for Abbott in advance of the letters to the Court and not promptly send the transcript to counsel for Dr. Cerami. Novartis was not permitted to decide that it could withhold the transcript from counsel for Dr. Cerami "if Abbott intervenes," a development which apparently had already been orchestrated.

We respectfully submit that under all of these circumstances counsel for Novartis and Abbott could not jointly decide to withhold this transcript without securing prior leave of the Court or counsel for Dr. Cerami. The effect of these decisions by Novartis and Abbott has been to impose additional burdens on the Court and counsel for Dr. Cerami, and to prevent reference to contents of the transcript at the hearing of September 10, 2008. The application should therefore be denied as procedurally inappropriate as well as substantively flawed.

**WINSTON & STRAWN** LLP

Hon. Alvin K. Hellerstein
September 9, 2008
Page 4

    2.    <u>Abbott has not shown a need for redaction and has abused the opportunity for redaction of other documents.</u>

There is a broad protective order in place that limits the use of confidential information. We again confirm that we will hold any sections of the transcript designated as confidential by Abbott as subject to that Order. We also proposed to Abbott that we would receive the transcript initially on an "attorneys eyes only" basis for a period of time, during which time we would discuss with counsel for Abbott any additional protections beyond the protective order which it deems appropriate. We sought to have these conversations in a context where all are aware of what is sought to be protected. This certainly is broader protection than was afforded to Abbott when it presented these matters in an arbitration proceeding to arbitrators, court reporters and opposing counsel.

Abbott has not provided the Court or counsel with any support for its effort to make unilateral decisions as to redactions. While we remain open to discussions as noted above, we are highly skeptical of the existence of the trade secrets referred to in the letter to the Court. Abbott sales data are publicly disclosed, and any data in the transcript would appear to be too old to have current competitive significance. It is data that we may well find relevant for damage issues, as well as settlement discussions. It is also difficult to anticipate what long ago included research data will be so confidential for a mature product in the market for years, whose manner of manufacture and components are matters of public record. In any event, Dr. Cerami is the original inventor of the patented product, participated in the arbitration, and is quite familiar with the technology.

We urge that Abbott has not established the claim of confidentiality by noting that it agreed to arbitrate rather than litigate. (*See* p. 1 *supra*). Abbott does not disclose that the arbitration agreement included a favorable provision that limited the maximum amount of damages that the arbitrators could award against Abbott. Thus, the certainty of a cap on damage exposure was a compelling reason to arbitrate rather than litigate.

    3.    <u>The prior proceedings do not support Abbott's request or the claims made in its application.</u>

The transcript of June 19 relied on by Abbott does not show that the Court decided to permit redaction as urged by Abbott. Rather it shows that counsel for Dr. Cerami had agreed to redactions of a group of documents produced in a Texas lawsuit, subject to a protective order of the Texas Court, solely in order to resolve disputes that impeded and delayed our ability to get important documents. (*See* pp. 8 *et seq*). Those circumstances are not here apposite. Moreover, Abbott has abused the redaction process with respect to earlier documents. While we do not know all of what was deleted, we are now seeking to persuade Abbott to agree to revise those redactions. The process is cumbersome.

Accordingly, the reference to prior action of the Court and the claim that redaction of the transcript "will not hinder these proceedings" are not support for the Abbott request for relief.

**WINSTON & STRAWN** LLP

Hon. Alvin K. Hellerstein
September 9, 2008
Page 5

### RESPONSE OF NOVARTIS:

Novartis takes no position with regard to the dispute between Abbott and Dr. Cerami regarding the redaction of the arbitration transcript, and will bring a copy of the transcript to the September 10, 2008 conference in the event the Court orders its immediate production. Contrary to Dr. Cerami's characterization of Novartis' position as working in conjunction with Abbott, Novartis has not produced the arbitration transcript only to avoid violating any of the Court's previous directives with regard to Abbott's confidential information. In fact, Abbott threatened to "enforce its rights against Novartis" if Novartis produced the transcript without allowing Abbott a chance to redact it (*see* September 4, 2008 email attached as Exhibit D). Novartis provided Dr. Cerami with the information concerning the arbitration transcript in full compliance with the Court's August 20 Order.

Novartis' ability to locate a copy of the transcript was consistent with all of its previous statements on the issue. Novartis did not have a copy of the transcript in its possession, but, as a result of Dr. Cerami's production of his copy of the transcript, Novartis was able to identify and contact the court reporters attending the arbitration, who located their copies of the transcript. Novartis immediately ordered copies of the transcript, and notified the Court of the transcript's existence in its September 3 letter.

Accordingly, Novartis has a copy of the arbitration transcript, and will immediately produce the transcript pending the Court's ruling on the dispute between Abbott and Dr. Cerami concerning Abbott's request for redaction. Novartis looks forward to addressing the merits of this case and its possible resolution at the September 10 conference.

### REPLY OF ABBOTT TO DR. CERAMI'S RESPONSE:

1. <u>Procedure</u>. Abbott takes issue with Dr. Cerami's characterization of its intervention in this matter as having been "orchestrated" with Novartis. For the record, Abbott first learned of Novartis' location and acquisition of the Arbitration Transcripts late in the afternoon of September 2, 2008, and since that time has asserted its confidentiality interests – the legitimacy of which this Court has recognized at least twice before – in the utmost good faith, in full consultation with both Dr. Cerami and Novartis. As an example if Abbott's good faith, Abbott has already undertaken to redact the lengthy and dense Arbitration Transcripts so that a redacted version will be available by for production to Dr. Cerami forthwith. Abbott has completed more than half of those redactions and will finish the remainder by this Friday, September 12, 2008.

2. <u>Abbott's Confidentiality Rights</u>. The agreement governing the arbitration between Abbott and Novartis – which was part of a settlement agreement the enforcement of which continues to be supervised by Judge Ward in the Texas TNF Litigation – in addition to requiring both parties to destroy all copies of the Arbitration Transcripts within 30 days after the panel's award, required both parties to keep all testimony from the arbitration confidential, and to provide notice to the opposite party in the event that another court ordered the production of such information so that the opposite party would have the opportunity to seek a protective order or

**WINSTON & STRAWN** LLP

Hon. Alvin K. Hellerstein
September 9, 2008
Page 6

other remedy. Abbott thus plainly has the right to seek to protect its trade secrets contained within the Arbitration Transcripts, and Novartis would have violated that right had it succumbed to Dr. Cerami's demand for production of the Arbitration Transcripts over Abbott's objections and prior to this Court's ruling on those objections.

Moreover, Dr. Cerami's contention that Abbott's public release of certain revenue totals undermines the confidentiality of the Arbitration Transcripts is unfounded. The financial figures discussed in the Arbitration Transcripts are far more detailed than anything Abbott releases publicly.

3. <u>Prior Redactions</u>. As for Dr. Cerami's contention that Abbott "abused the redaction process" with respect to other materials which were produced in redacted form to Dr. Cerami in early July 2008, Dr. Cerami did not raise any objection to those redactions until September 4, 2008, in the context of objecting to Abbott's current application. Abbott welcomes the opportunity to resolve any objections to the scope of its redactions without burdening the Court.

Very truly yours,

Michael J. Friedman

Attachments

cc (by email):
    Stefan W. Engelhardt, Esq.
    Craig B. Whitney, Esq.
    Barry J. Brett, Esq.
    Sharon H. Stern, Esq.

NY:1198255.2